## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDREW J. DALY,<br><br>    Plaintiff,<br><br> v.<br><br>CHRISTOPHER S. MASON, individually;<br>JOHN D. PINKHAM, individually and as<br>Lt. Colonel of Standards of Training for the<br>Massachusetts State Police; and<br>JOHN E. MAWN, individually and as<br>Colonel of the Massachusetts Department of<br>State Police,[1]<br><br>    Defendants. | C.A. No. 4:23-cv-40162-MRG |

## INDIVIDUAL DEFENDANTS' MEMORANDUM
## IN SUPPORT OF THEIR MOTION TO DISMISS

Plaintiff Andrew J. Daly, while an officer with the Massachusetts State Police ("MSP"), served as treasurer for the State Police Association of Massachusetts ("SPAM"). Daly was identified in a federal indictment charging the president of SPAM with a slew of financial crimes, and was cooperating with the United States Attorney's Office ("USAO") under an immunity agreement. A few months before Daly was scheduled to testify for the prosecution in the criminal trial, he was told that MSP would hold a "Duty Status" hearing and open an Internal Affairs investigation ("IA investigation") into his possible past misconduct. Daly retired before the hearing and investigation began, only to allege months afterwards that this retirement was "coerced." Daly asserts civil rights and tort claims against his former superiors in their individual capacities. These claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1] Defendant Christopher S. Mason retired from MSP in February 2023. By operation of Fed. R. Civ. P. 25(d), Mawn, who is the current Colonel of MSP, substitutes Mason as the defendant to the official capacity claim.

## ALLEGATIONS[2]

Daly was an officer with MSP between 2000 and 2022. Dkt. 1, Compl., ¶ 8. At the time the allegations begin in 2018, Christopher Mason was Colonel and John Pinkham was Lieutenant Colonel for Standards and Training at MSP. Id. ¶¶ 5–6. Notwithstanding Daly's confusing allegation that John Mawn was also Colonel in 2018 (id. ¶ 7), in actuality Mawn assumed that role in February 2023, following Mason's retirement.[3]

In 2018, the USAO initiated a criminal investigation into SPAM, the collective bargaining unit for noncommissioned MSP officers, as well as into SPAM's then-president, Dana Pullman ("Pullman"). Id. ¶¶ 9, 11, 13. Daly was SPAM treasurer at that time, and had already served on SPAM's executive board for roughly ten years. Id. ¶¶ 10–11, 27. Daly did not receive a target letter from the USAO, but he cooperated with prosecutors under an immunity agreement. Id. ¶¶ 12, 14–15. Daly alleges that he "required that the immunity agreement NOT BE extended to him in exchange to avoid prosecution [*sic*]" (capitals in original), and that the USAO "agreed and maintained that Daly had not conspired with SPAM's president," but the immunity agreement itself does not reflect this. Compare id. ¶ 15 with Ex. 1, Immunity Agreement.[4] As a cooperator with the USAO, Daly met with prosecutors and testified before a grand jury. Dkt. 1, Compl., ¶ 16.

---

[2] The allegations are taken as true for present purposes only.

[3] See *Governor Healey and Lt. Governor Driscoll Appoint John E. Mawn, Jr. as Massachusetts State Police Interim Colonel*, Executive Office of Public Safety and Security (February 17, 2023), https://www.mass.gov/news/governor-healey-and-lt-governor-driscoll-appoint-john-e-mawn-jr-as-massachusetts-state-police-interim-colonel. This Court may take judicial notice of this official Commonwealth press release concerning Mawn's promotion, whether as a public record and/or as a document whose authenticity cannot reasonably be disputed. See, e.g., Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (in considering dismissal under Fed. R. Civ. P. 12(b)(6), this Court "may augment [pled] facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."); see also Fed. R. Evid. 201(b).

[4] This Court may take judicial notice of the immunity agreement because it is sufficiently referred to in the complaint, such that it is incorporated by reference, and its authenticity cannot reasonably be disputed. Haley, 657 F.3d at 46; Fed. R. Evid. 201(b).

Daly resigned as SPAM treasurer in July 2019, about a year into the USAO's investigation. Id. ¶ 18. In September 2019, just two months after Daly's resignation, the prosecutors issued a fifty-page indictment against Pullman, charging him with a host of counts all chiefly financial in nature, such as wire fraud, conspiracy to defraud, and aiding and abetting false tax returns. See id. ¶ 17; see also Ex. 2, Indictment.[5] The indictment did not identify Daly by name, but referred to him throughout as "The Treasurer." Ex. 2, Indictment, ¶¶ 19, 41–42, 49, 56–59. In May 2022, prosecutors "requested" that Daly testify at Pullman's trial, which was set for October 2022. Dkt. 1, Compl., ¶ 22. Daly informed "the defendants" that he received a subpoena, and they "authorized" him to prepare for his trial testimony. Id. ¶¶ 23–24.

On an unspecified date in July 2022, Pinkham "met with Daly and told him that on July 19, 2022, he would be placed on administrative leave," and that a "Duty Status" hearing would be scheduled for July 21.[6] Id.¶ 25. Pinkham also allegedly told Daly that "he could expect to be suspended," either with or without pay. Id. At some unspecified point in time, Pinkham told Daly that "the defendants" were "concerned" about what might come out during Daly's trial testimony, and that "he intended" to initiate an IA investigation into Daly's "conduct." Id. ¶ 26. Over the weekend before Daly's Duty Status hearing, Pinkham allegedly "informed" Daly that the IA investigation would "likely" result in suspension without pay and a demotion. Id. ¶ 30.

Daly retired on July 18, 2022, before the Duty Status hearing and prior to commencement of any IA investigation. Id. ¶ 32. In support of his conclusory allegation that his retirement was "coerced," Daly states he was "aware," by virtue of his experience on SPAM's executive board,

---

[5] This Court may take judicial notice of the indictment, a public record. Haley, 657 F.3d at 46; Fed. R. Evid. 201(b).

[6] MPS holds a Duty Status hearing when concerns arise about an officer's fitness to perform their duties, or to do so without discredit or embarrassment to the force, and/or where there is an Internal Affairs investigation ("IA investigation") of the officer. There are four possible results for the officer's status: full duty, restricted (desk) duty, suspension with pay, and suspension without pay. See Ex. 4, MSP Rules & Regs. §§ 6.1.1, 6.2.1(2), 6.2.4.

that "a very low percentage of officers" are suspended with pay following Duty Status hearings, as well as his understanding that if he retired while an IA investigation was underway, he would not be eligible for retirement benefits and may not receive an Honorable Discharge. Id. ¶¶ 27–32. After retiring, Daly testified at Pullman's criminal trial in October 2022. On November 3, 2022, a jury found Pullman guilty on all counts, including wire fraud, conspiracy to defraud the United States, and aiding and assisting in filing false tax returns. See Ex. 3, Verdict.[7]

On or about May 25, 2023, Daly sought permission from Mawn, who had become Colonel a few months earlier, to un-retire and re-join MSP. Id. ¶ 33. Mawn declined to rehire Daly on August 4, 2023. Id. ¶ 34. Daly now sues, asserting that Defendants violated his constitutional rights and committed various torts when they "coerced" him to retire, including: violation of the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12 §§ 11H and 11I (Count I); retaliation for engaging in protected speech under the First Amendment (Count II); deprivation of employment without due process in violation of the Fourteenth Amendment (Count III); conspiracy to interfere with civil rights under 42 U.S.C. § 1985 (Count IV); as well as torts of civil conspiracy and intentional infliction of emotional distress ("IIED") (Counts V and VI). Id. ¶¶ 36–74. Daly asserts all claims against all Defendants, making no distinction between official and individual capacity claims. Id. In addition to compensatory and punitive damages, and attorneys' fees, Daly seeks equitable relief in the form of an "order that he be reinstated to the Department of State Police without any loss of rank or compensation." Id. at 11, Prayer for Relief (c).

## **STANDARD OF REVIEW**

"To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[7] This Court may take judicial notice of the verdict, a public record. Haley, 657 F.3d at 46; Fed. R. Evid. 201(b).

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quotation omitted). If the facts pled are "merely consistent" with a claim for relief, the pleading "stops short of the line between possibility and plausibility," and there is no "entitlement to relief." Id. at 678 (quotation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (edits in original) (quoting Twombly 550 U.S. at 557).

"Dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quotation omitted). However, "the rote recital of the elements of a cause of action is not enough, by itself, to nudge a case past the plausibility threshold," even if "plaintiffs attempt to camouflage conclusory statements as allegations of fact." A.G. v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013). In reviewing the pleading, this Court may and should draw on its experience and common sense. Ashcroft, 556 U.S. at 663–64.

## **ARGUMENT**

I.    **Count I (MCRA) Must be Dismissed as a Matter of Fact and as a Matter of Law, Because Daly Fails to Allege Threats, Intimidation Or Coercion.**

Daily fails to plausibly allege that the individual Defendants used "threats, intimidation or coercion" to deprive him of constitutional rights.[8] To establish a claim under the MCRA, Daly "must demonstrate that (1) his exercise or enjoyment of rights secured by the Constitution or laws

---

[8] The MCRA claim fails for another reason: Daly does not sufficiently or plausibly allege a deprivation of constitutional rights. Infra. §§ II–III. Where there is no violation of rights, there can be no claim under the MCRA.

of either the United States or the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." Meuser v. Fed. Express Corp., 564 F.3d 507, 516 (1st Cir. 2009) (quotation omitted). Under the MCRA, "threat" means "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm," "intimidation" means "putting in fear for the purpose of compelling or deterring conduct," and "coercion" means "the application to another of such force, either physical or moral, as to constrain him to do against his will something" he would not have done. Id. (quoting Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994)).

"Whether conduct amounts to threats, intimidation, or coercion" under the MCRA "is assessed using an objective, 'reasonable person' standard." Salmon v. Lang, 57 F.4th 296, 316–17 (1st Cir. 2022) (citing Planned Parenthood, 417 Mass. at 477). "Non-physical coercion rarely supports a basis for recovery." Id. (citing Thomas v. Harrington, 909 F.3d 483, 492–93 (1st Cir. 2018)). "Although 'purely economic pressures may constitute actionable coercion under the MCRA,' 'the exception for claims based on non-physical coercion remains a narrow one.'" Thomas, 909 F.3d at 492 (quoting Nolan v. CN8, 656 F.3d 71, 77–78 (1st Cir. 2018)). Importantly, as the First Circuit recognized in Thomas, "Massachusetts courts have *required* 'a *pattern* of harassment and intimidation' to support a finding of non-physical coercion under the MCRA." Id. at 493 (emphasis added) (citations omitted). Further, "by itself, a threat to use lawful means to reach an intended result is not actionable under [the MCRA]." Id. (quoting Buster v. George W. Moore, Inc., 438 Mass. 635, 648 (2003)).

As an initial matter, Daly's allegations do not show any sort of threat, intimidation or coercion—they merely show that Pinkham told Daly that MSP intended to initiate an IA investigation into Daly's potential involvement in financial crimes when he was SPAM Treasurer,

and hold an accompanying Duty Status hearing, which is standard practice. The only alleged "coercion" at issue is that Pinkham made abstract predictions about what might happen in the future: that Daly could "expect" to be suspended and "would likely" be facing suspension without pay and demotion. There are no allegations of physical force, material threats, or anything showing an "*intentional* exertion of pressure" to make Daly "fearful" of injury or harm. Meuser, 564 F.3d at 516. There is also nothing in the complaint beyond conclusory assertions to show that any of the Defendants applied "such force, either physical or moral," to Daly, "as to constrain him to do against his will something he would not otherwise have done." Id.; see also Salmon, 57 F.4th at 317 ("Mere recitals of boilerplate claims of threats, intimidation, or coercion do not meet the requirements of MCRA pleading." (edits and quotation omitted)). Pinkham's alleged conduct, even if it motivated Daly to retire against his wishes, was not so coercive that it stripped Daly of his free will.

Furthermore, even accepting Daly's allegations as true and drawing inferences in his favor, the pleading is plainly insufficient for an MCRA claim because the alleged "threats, intimidation or coercion" at issue are expressly non-physical. Daly is therefore "required" to show a "pattern of harassment and intimidation." Thomas, 909 F.3d at 493. The alleged "threats" or "coercion" consist of only two communications from Pinkham, both in July 2022. Daly does not allege that Pinkham or the other individual Defendants, or anyone else for that matter, had any relevant interactions with him prior to that time, let alone that they engaged in a *pattern* of harassment intended to interfere with constitutional rights. Cf. id.; see also Salmon, 57 F.4th at 317 (granting summary judgment on MCRA claim to defendants where alleged threats, intimidation, or coercion involved actions "too trivial to constitute a pattern of harassment or intimidation sufficient to deter an ordinary person from exercising her freedom of speech.").

Lastly, Daly's allegations do not suffice for an MCRA claim as a matter of law because the alleged "threats" involved "use [of] lawful means to reach an intended result." Thomas, 909 F.3d at 493; see also Sena v. Commonwealth, 417 Mass. 250, 263 (1994) (officer's "threat to use lawful means to reach an intended result is not actionable under" the MCRA). The alleged "threat" or "coercion" here is that Pinkham informed Daly that MSP "intended to initiate" lawful process into Daly's conduct via an IA investigation and a Duty Status hearing. This cannot give rise to a claim under the MCRA. Id.

Daly's allegations do not show the essential element of "threats, intimidation, or coercion" and fail to show any pattern of harassment or intimidation. Both as a matter of fact and a matter of law, Count I must be dismissed.[9]

## II.    Count II (42 U.S.C. § 1983 Speech-Retaliation) Must be Dismissed Because Daly's Interests in Testifying Did Not Outweigh MSP's Interests in Investigation His Possible Misconduct, and Because Defendants are Entitled to Qualified Immunity.

Count II of Daly's Complaint, a Section 1983 claim alleging that Defendants' actions were retaliatory in violation of his First Amendment rights, should be dismissed because Daly fails to show, and indeed cannot show, that his interest in testifying at Pullman's trial under a grant of immunity outweighed MSP's governmental interest in investigating his possible misconduct. Furthermore, Daly does not allege that Mason and Mawn were involved in any retaliatory action.

To establish a prima facie case for First Amendment retaliation, Daly must show that (1) "his expression involved matters of public concern," (2) "his interest in commenting upon those matters outweighed [Defendants'] interests in the efficient performance of [their] public

---

[9] Defendants are also entitled to qualified immunity on Plaintiff's MCRA claim for the same reasons discussed infra at §§ II–IV, regarding Daly's § 1983 and § 1985 claims. See Kelley v. LaForce, 288 F.3d 1, 10 (1st Cir. 2002) (MCRA claims subject to "the same qualified immunity standard" as § 1983 claims). The Court can therefore dismiss Plaintiff's Count I on the basis of qualified immunity. However, the Court need not address qualified immunity if it finds that the pleading "fails to support a finding that [Defendants] violated the MCRA," as is the case here. Thomas, 909 F.3d at 493 n.18.

services," and (3) "his protected speech was a substantial or motivating factor in the adverse employment actions that were visited upon him." Alston v. Brookline, 997 F.3d 23, 42 (1st Cir. 2021). Daly alleges, and at this stage the Court must accept, that Defendants were motivated to take adverse action against him because of his testimony. But Daly fails to allege anything to show that his interest in testifying outweighed Defendants' interest in initiating an investigation into his potential misconduct. Precedent makes plain that Defendants' interest was and remains extremely strong, establishing that their conduct was proper and within the bounds of the First Amendment.

**A.** ***Daly cannot show, and has alleged nothing to show, that his interest in testifying outweighed Defendants' interest in inquiring into the conduct of an officer enmeshed in the allegations of a criminal prosecution.***

A straightforward examination of the circumstances surrounding Daly's allegations shows that the interest of MSP and the individual Defendants to inquire into Daly's possible misconduct outweighed his interest in testifying under a grant of immunity. When an employee's speech is as a citizen and on a matter of public concern, the Court turns to the second prong of the analysis, conducting a balancing test derived from Pickering v. Board of Education:

> [t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. This consideration reflects the importance of the relationship between the speaker's expressions and employment. A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has *some potential* to affect the entity's operations.

Curran v. Cousins, 509 F.3d 36, 45 (1st Cir. 2007) (emphasis added) (quoting Garcetti v. Ceballos, 547 U.S. 410, 410 (2006)); see also Pickering, 391 U.S. 563 (1968). The individual Defendants, and MSP as a whole, had more than an adequate justification to inquire into Daly's possible involvement in significant financial misconduct by SPAM leadership, as this undoubtedly had the potential to impact MSP's operations.

In July 2022, the content of Daly's testimony was not known. What *was* known, however, gave Defendants ample reason to be concerned about the possibility that Daly—a Captain with the State Police—would reveal his own misconduct, whether criminal or a violation of MSP policies and standards. As Daly notes, Defendants knew of the criminal investigation. The indictment (which was public and gained significant media attention) outlined a host of financial crimes and repeatedly referenced the SPAM "Treasurer," *i.e.*, Daly. He was to testify for the prosecution under an immunity agreement. While Daly had an interest in testifying and was subpoenaed to do so, MSP had an ongoing obligation and duty to ensure its officers comply with policy standards and criminal laws. More importantly, the public also shares a serious interest in exposing and addressing possible officer misconduct. See Guilloty Perez v. Pierluisi, 339 F.3d 43, 52 (1st Cir. 2003) ("The diligence and lawfulness of a police department's activities are matters of great interest to the public."); Wagner v. Holyoke, 241 F. Supp. 2d 78, 93 (D. Mass. 2003) ("[T]here is no question that the possibility of serious misconduct within the [police] department is a subject of paramount public concern."); see also Brady v. Tamburini, 518 F. Supp. 3d 570, 585 (D.R.I. 2021) ("Possible corruption within a police department and the lawfulness of its activities are matters of public concern."). In this situation, MSP acted consistently with its strong governmental interest in ensuring the "diligence and lawfulness" of its officers by initiating an IA investigation and scheduling a Duty Status hearing to investigate, consider and determine whether Daly should be disciplined.

Although Daly had a strong interest in testifying in the criminal proceeding under a grant of immunity, his interest in testifying did not and could not weigh more heavily than MSP's interest in investigation the possible misconduct for which he received immunity. Curran, 509 F.3d at 45; Cf. Lane v. Franks, 573 U.S. 228, 242 n.5 (2014) (holding that the content of an employee's

testimony "may be a valid basis for termination or other discipline"). Daly cannot show that his interests in testifying outweighed Defendants' and the public's interests in investigating the lawful standing of MSP's officers. Count II should be dismissed as a matter of law.

**B.** ***Any actionable claim for speech-retaliation does not lie against Mason and Mawn because they are not alleged to have been involved in any of the claimed retaliatory acts.***

Daly's Section 1983 claim against Mason and Mawn should be dismissed because Plaintiff makes no allegations that Mason or Mawn took retaliatory action against him. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." <u>Ashcroft</u>, 556 U.S. at 676 (emphasis added). Daly alleges that Pinkham was involved in "coercive" behavior leading to his retirement, but says nothing about Mason or Mawn taking part in that conduct. The pleading refers to Mason only once, to introduce him as the Colonel of MSP. Dkt. 1, Compl., ¶ 5. And as to Mawn, other than alleging that he, too, was the Colonel, Daly asserts only that Mawn decided not to re-hire him. <u>Id.</u> ¶¶ 7, 33–34. Even if Daly had a viable speech-retaliation claim, it could not lie against Mason or Mawn.

Daly cannot avoid this conclusion by alleging that Mason or Mawn were in a supervisory position. "It is well established that a supervisor may be found liable under Section 1983 only on the basis of her or his own acts or omissions." <u>Manarite v. City of Springfield</u>, 957 F.2d 953, 957 (1st Cir. 1992) (edits and quotation omitted). To assert a claim against Mason and Mawn, Daly must allege not only that Pinkham, as a subordinate, violated his constitutional rights, but also that Mason and Mawn committed acts or omissions that satisfy the so-called "deliberate indifference" standard, showing an "affirmative link" to the alleged violation. <u>See</u> <u>Guadalupe-Báez v. Pesquera</u>, 819 F.3d 509, 514–15 (1st Cir. 2016). There are no allegations to satisfy this demanding standard.

With no speech-retaliation claim having been pled against Mason or Mawn, Count II must be dismissed as to them.

C.    ***All the Individual Defendants are entitled to qualified immunity against Daly's free-speech-based claims.***

The individual Defendants are entitled to qualified immunity on Daly's Count II. At the time of Defendants' alleged actions, it was not clearly established that investigating the possible misconduct of a commissioned police officer, who was repeatedly named in a federal indictment and was subpoenaed to testify in a criminal trial, violated that officer's First Amendment rights. Defendants are also entitled to qualified immunity because a reasonable official in their positions would not have understood their alleged misconduct as violating Daly's First Amendment rights.

An official is entitled to qualified immunity when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." White v. Pauly, 580 U.S. 73, 78–79 (2017) (quotation and citation omitted). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Diaz-Bigio v. Santini, 652 F.3d 45, 50 (1st Cir. 2011) (quotation and citation omitted). The defense "provides defendant public officials 'an immunity from suit rather than a mere defense to liability.'" Penate v. Hanchett, 944 F.3d 358, 365 (1st Cir. 2019) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The Supreme Court has emphasized 'the importance of resolving immunity questions at the earliest possible stage in litigation.'" Haley v. City of Boston, 657 F.3d 39, 47 (1st Cir. 2011) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)). "When a defendant invokes qualified immunity, the burden is on the plaintiff to show that the defense is inapplicable." Escalera-Salgado v. United States, 911 F.3d 38, 41 (1st Cir. 2018).

Courts follow a two-step inquiry in assessing a claim of qualified immunity, considering: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional

right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 8 (1st Cir. 2013) (citation omitted). A plaintiff must satisfy "both prongs" of this test "to overcome a qualified immunity defense," Raiche v. Pietroski, 623 F.3d 30, 35 (1st Cir. 2010), and courts need not address both prongs if the plaintiff fails to satisfy either one of them. See, e.g., Eldredge v. Town of Falmouth, 662 F.3d 100, 105–07 (1st Cir. 2011). The "clearly established" inquiry has two elements. "The first focuses on the clarity of the law at the time of the violation. The other aspect focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." Penate, 944 F.3d at 366 (quotations and citations omitted). "The inquiry is context-dependent; rights cannot be established as a broad general proposition." Id.

Multiple relevant propositions were not clearly established when the individual Defendants allegedly retaliated against Daly for his protected speech. First, Daly cannot show that it was clearly established under Pickering balancing that his interest in testifying outweighed (or was even at odds with) the significant interests that both MSP and the public had in investigating the possibility that an officer, who is named and enmeshed in potential criminal activity, committed misconduct. Qualified immunity is particularly important here. "In the First Amendment context, the First Circuit has observed that because the Pickering balancing of interests is subtle, difficult to apply, and not yet well defined, only in the extraordinary case will it have been clearly established that a public employee's speech merited constitutional protection." Maloney v. Bd. of Trs. of Clapp Mem. Library, Case No. 14-cv-30054-KAR, 2016 WL 1170967, at *10 (D. Mass. Mar. 24, 2016) (edits omitted) (quoting Diaz-Bigio, 652 F.3d at 53); see also Fabiano v. Hopkins, 352 F.3d 447, 457 (1st Cir. 2003) ("Because Pickering's constitutional rule turns upon a fact-

intensive balancing test, it can rarely be considered 'clearly established' for purposes of qualified immunity." (quotation omitted)). Many other Circuit Courts of Appeals have likewise recognized that because "the determination whether an employee's expression is constitutionally protected requires a fact-sensitive, context-specific balancing of competing interests, the law regarding public-employee free speech claims will rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity[.]" Brewster v. Bd. of Educ., 149 F.3d 971, 979–80 (9th Cir. 1998) (citing many others). This case in particular presents an extremely difficult, murky situation, with Daly's First Amendment interests clashing against Defendants' obligations, as well as the public's interests, to investigate and, if needed, address possible misconduct within MSP. There is no reason to conclude that this case presents the "sort of unusual circumstances that would support the finding of a clearly established right notwithstanding Pickering." Fabiano, 352 F.3d at 457–58.

Further, where relevant law was not clearly established, a reasonable officer in Defendants' positions would not have understood anything to the contrary, or known that investigating Daly for his potential misconduct would intrude on First Amendment rights. While the Supreme Court "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." White, 580 U.S. at 79. This constitutionality of the conduct and issues presented here is far from being "beyond debate." Only a decade ago, the Supreme Court considered in Lane "whether the First Amendment . . . protects a public employee who provided truthful sworn testimony, compelled by subpoena, outside the course of his ordinary job responsibilities." 573 U.S. at 231. The Supreme Court held that the First Amendment does provide these protections, see id., but simultaneously remarked: "Of course, quite apart from Pickering balancing, wrongdoing that an employee admits to while testifying may be a valid basis for termination or other discipline." Id. at 242 n.5. The Supreme

Court thus explicitly left the door open for government officials to exercise their judgment to investigate, and even to "terminate or discipline," government employees based on the content, or anticipated content, of their testimony. The state of the law here is far from clearly established. Cf. White, 580 U.S. at 79 ("it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined at a high level of generality. As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case.").

Lastly, given the absence of any allegations implicating Mason or Mawn, Daly cannot show that it is clearly established law that, by virtue of their positions as supervisors and nothing else, they can be held liable for the conduct of another. Manarite, 957 F.2d at 957; Guadalupe-Báez, 819 F.3d at 514–15.

In short, the law here is not clearly established, and it cannot be said that Defendants' actions reveal them to be "plainly incompetent" or as having committed knowing violations Daly's First Amendment speech rights. Diaz-Bigio, 652 F.3d at 50. Defendants are entitled to qualified immunity on Count II.

### III.    Count III (42 U.S.C. § 1983 Deprivation of Due Process) Must be Dismissed Because the Due Process Offered by the Commonwealth is Constitutionally Sound, and Daly Fails to Allege Anything Showing it is Patently Inadequate.

Count III of Daly's Complaint, a Section 1983 claim alleging that he was deprived of his Fourteenth Amendment procedural due process rights by the events leading to his retirement, fails because Daly does not plausibly allege that the due process available to him was patently inadequate. "In order to prevail on a claim of a deprivation of procedural due process, 'the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate.'"[10] Lamoureux v. Haight, 648 F. Supp. 1169, 1175 (D. Mass. 1986)

---

[10] For present purposes only, Defendants assume Daly had a property interest in his employment.

(quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 539 (1984)) (granting motion to dismiss deprivation of due process claim under § 1983). Daly must allege sufficient facts to show Defendants deprived him of due process, *i.e.*, "some kind of hearing and some pretermination opportunity to respond," <u>Acevedo-Feliciano v. Ruiz-Hernandez</u>, 447 F.3d 115, 121 (1st Cir. 2006) (quotation omitted)), or that the due process offered by Defendants was inherently inadequate. Daly fails to make any such allegations. Further, any due process claim plainly does not lie against Mason or Mawn. Lastly, the claim is barred by qualified immunity.

        **A.**       ***The due process offered by MSP is more than sufficient to satisfy the Fourteenth Amendment, and Daly's failure to avail himself of this due process cannot give rise to a constitutional claim.***

Daly fails to allege any facts to plausibly suggest that the due process available to him was insufficient. An alleged due process violation "is not complete unless and until the State *fails to provide* due process." <u>Zinermon v. Burch</u>, 494 U.S. 113, 126 (1990) (emphasis added). "Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate," which examines "the procedural safeguards built into the statutory . . . procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute[.]" <u>Id</u>.

Daly makes no allegations regarding the nature of the due process available to him, and he does not allege that such process was insufficient. Indeed, any such allegation would be conclusory and without basis, considering the robust due process protections afforded to Daly. First, the Duty Status hearing, in which Daly could opt be represented by counsel, would be held before three officers who would hear evidence and make a recommendation to the Colonel (at the time, Mason). <u>See</u> Ex. 4, MSP Rules & Regs. §§ 6.2.2, 6.2.5.[11] The Colonel, with the benefit of the panel's

---

[11] This Court may take judicial notice of MSP's Rules and Regulations, because these are public records and their authenticity cannot reasonably be disputed. <u>Haley</u>, 657 F.3d at 46; Fed. R. Evid. 201(b).

recommendation, would in turn decide Daly's status as full duty, desk duty, suspended with pay, or suspended without pay. Id. If dissatisfied, Daly could appeal that determination within MSP and present further evidence to support his position. M.G.L. c. 22C § 43. Lastly, any lingering doubt about the adequacy of the due process for Duty Status hearings is decisively put to rest by the fact that Daly could appeal to the courts for judicial review. Id. Separately, as to any discipline that could possibly result from an IA investigation, Daly would first be entitled to notice and a hearing before an agency trial board. See Ex. 4, MSP Rules & Regs. §§ 6.4.3, 6.5, 6.7. The trial board, in turn, would make a recommendation to the Lieutenant Colonel, who would review it prior to submitting the matter to the Colonel for a decision. Id. at §§ 6.8–6.9. Should the decision be adverse, Daly could appeal to the Civil Service Commission, an independent agency, for de novo review. M.G.L c. 22C § 13 (permitting appeals under M.G.L. c. 31 §§ 41–45). Finally, Daly could once again appeal to the courts for judicial review. M.G.L. c. 31 § 44 (allowing judicial review under M.G.L. c. 30A). These due process protections are plainly adequate, and Daly does allege anything in his complaint to rebut or undermine their sufficiency.

Importantly, Daly's failure to take advantage of these robust protections cannot give rise to a due process claim as a matter of law. Defendants "cannot be held to have violated due process requirements when [the Commonwealth] has made procedural protections available and the plaintiff has simply refused to avail himself of them." Temple v. Marlborough Div. of Dist. Court Dep't, 395 Mass. 117, 128 (1985) (edits and quotation omitted). It is a well-established "logical proposition" that when "the procedural protections existed, the state cannot be accused of withholding them in a section 1983 suit." Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982); see Burrell v. Bd. of Trs. for the Univ. of Me. Sys., 15 F. App'x 5, 6 (1st Cir. 2001) (per curiam) ("where [the] state provides post-termination remedy, one who fails to take advantage of that

remedy is barred from pursuing a federal due process claim." (citing <u>Herwins v. City of Revere</u>, 163 F.3d 15, 20 (1st Cir. 1998))); <u>Lamoureux</u>, 648 F. Supp. at 1175 (granting motion to dismiss § 1983 due process claim where plaintiff failed to avail himself of state remedies or demonstrate that those remedies were inadequate); <u>see also, e.g.</u>, <u>Ashley v. NLRB</u>, 255 F. App'x 707, 709–10 (4th Cir. 2007); <u>Alvin v. Suzuki</u>, 227 F.3d 107, 116 (3d Cir. 2000); <u>Bonilla v. Rodriguez</u>, 635 F. Supp. 148, 153 (D.P.R. 1986). Even accepting Daly's allegations that he was "coerced" to retire, therefore, his claim for a violation of due process fails as a matter of law. This particularly where Daly's allegations demonstrate that MSP was going to initiate an IA investigation and Duty Status hearing, standard first steps in the due process scheme. To the extent that Daly implies this due process was rigged or insufficient, there is nothing in the complaint to support this or to indicate that the many due process protections, provided by policy and statute, are patently inadequate.

Additionally, with respect to Daly's claim that he was deprived of due process pursuant to the MCRA, this claim fails not only for the reasons discussed above, but also because Daly fails to plausibly allege threats, intimidation, or coercion. <u>Supra</u> at § I, *7–8. Therefore, Count III must be dismissed.

**B.     *Any actionable claim for deprivation of due process does not lie against Mason and Mawn because they are not alleged to have been involved in the acts.***

As noted, § 1983 liability may only attach to an individual based on that person's own conduct, and a supervisor cannot be vicariously liable unless he was "deliberately indifferent" via an "affirmative link" to the alleged constitutional violation. <u>Supra</u> at § II.B, *11–12. There are no allegations anywhere in the complaint linking Mason or Mawn to any alleged due process violations. Dkt. 1, Compl., ¶ 5, 7, 33–34. Thus, even if Daly had alleged a viable due process claim, Count III must be dismissed as against Mason and Mawn.

**C.    *Daly's due process claim is barred by qualified immunity.***

Qualified immunity should be decided at the earliest possible stage in litigation. <u>Haley</u>, 657 F.3d at 47. Here, Daly cannot sustain his burden of showing that multiple propositions of law are clearly established, or that any of the Defendants reasonably should have known their conduct deprived him of constitutional due process rights. Any reasonable officer in Defendants' positions would operate under the same assumption: that affording Daly the opportunity to take advantage of all the protections available to him is proper procedure, such that Defendants are abiding by the requirements of the Fourteenth Amendment, not contravening them. <u>See, e.g.</u>, Zinermon, 494 U.S. at 126; <u>Lamoureux</u>, 648 F. Supp. at 1175. Daly does not allege he was terminated outright. Rather, he had the opportunity to avail himself of due process protections while still employed by MSP. But case law in the termination context, which is more severe, operates under the same paradigm: that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." <u>Hudson</u>, 468 U.S. at 533; <u>see also, e.g.</u>, <u>Burrell</u>, 15 F. App'x at 6. Here, Daly alleges that he *was* afforded due process, he simply implies that this process was insufficient, rigged, or somehow already predetermined, such that he had no choice but to retire. But even accepting Daly's allegation that he was "coerced" to retire, no officer would have known that he was violating clearly established due process rights merely by informing Daly he was to undergo a Duty Status hearing and IA investigation. Furthermore, the implicit suggestion that the due process available to Daly was a *fait accompli* is undermined by the multitude of safeguards attendant to Duty Status hearings and IA investigations, including administrative and judicial review. Daly cannot show, and fails to allege how, it is clearly established that the processes available are all so constitutionally infirm so as to make them

inadequate. Lastly, given the absence of allegations implicating Mason or Mawn, Daly cannot show that it is clearly established law that, by virtue of their supervisory positions alone, either could be held liable for a deprivation of due process claim.

In short, it cannot be said that Defendants' actions reveal them to be "plainly incompetent" or as having committed knowing violations Daly's Fourteenth Amendment due process rights. Diaz-Bigio, 652 F.3d at 50. Defendants are entitled to qualified immunity on Count III.

## IV.   Count IV (42 U.S.C. § 1985 Conspiracy) Must Be Dismissed Because Daly Fails to Allege a Conspiracy to Deter Testimony by Force, Intimidation, or Threat.

In Count IV, Daly alleges that Defendants conspired to deprive him of his First and Fourteenth Amendment rights in violation of 42 U.S.C. § 1985. This claim must be dismissed because Daly's allegations are insufficient to show that Defendants conspired and used force, intimidation, or threats to deter him from testifying. Section 1985 has three subsections, but only the first part of subsection (2) is applicable here.[12] This provision creates a cause of action when:

> two or more persons . . . conspire to deter, by force, intimidation, or threat, any party or witness in any [federal] court from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness . . . on account of his having so attended or testified[.]

42 U.S.C. § 1982(2).[13] Thus, Daly must allege (1) a conspiracy among two or more persons, (2) to deter him "by force, intimidation, or threat" from testifying in a federal proceeding, (3) resulting in injury. See Moore v. Potter, 141 F. App'x 803, 806 (11th Cir. 2005). There is "a dearth of

---

[12] Subsection (1) concerns conspiracies to deter a person from holding positions "under the United States," or discharging duties under such federal office. See Canlis v. San Joaquin Sheriff's Posse Comitatus, 641 F.2d 711, 717 (9th Cir. 1981) (protections of § 1983(1) "extend exclusively to the benefit of federal officers"). Subsection (3) concerns conspiracies to deprive individuals of equal protection of the laws, and must be premised on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Burns v. State Police Ass'n of Mass., 230 F.3d 8, 12 (1st Cir. 2000) (quotation omitted). Lastly, the second portion of § 1983(2) concerns equal protection of the laws and is treated akin to subsection (3). See Hahn v. Sargent, 523 F.2d 461, 469 (1st Cir. 1975).

[13] The balance of the quoted statutory text is irrelevant because it concerns conspiracies "to injure" a person after he has already testified. Here, Daly's allegations are centered on events that occurred prior to his delivery of testimony.

authority" construing § 1985(2), especially the portion at issue here. See Hahn v. Sargent, 523 F.2d 461, 469 (1st Cir. 1975). Therefore, Defendants draw on related authorities—those pertaining to the other aspects of § 1985 and the MCRA—to guide their analysis.

Daly make no allegations suggesting that the individual Defendants conspired against him. "To adequately plead the existence of a conspiracy 'a plaintiff must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of [his] civil rights' or 'plausible factual allegations sufficient to support a reasonable inference that such an agreement was made.'" Brown v. Cumberland Cnty., 557 F. Supp. 3d 169, 188 (D. Me. 2021) (quoting Alston v. Spiegel, 988 F.3d 564, 577–78 (1st Cir. 2021) ("Spiegel")). "Vague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss." Spiegel, 988 F.3d at 578. At best, Daly's pleading amounts to exactly what the First Circuit deemed inadequate in Spiegel. The only relevant allegation implicating multiple individuals is Daly's claim that "Pinkham told Daly that the defendants were concerned" about his testimony "and what may come out during it." Dkt. 1, Compl., ¶ 26. This is not an allegation indicating, or providing grounds to infer, an agreement among the Defendants to deploy lawful process in an effort to deter Daly from testifying. Daly not only offers "scant specifics as to the nature of [Defendants'] joint effort or the formation of their agreement," his complaint suffers from wholesale absence of any such specifics. Cf. Brown, 557 F. Supp. 3d at 188 (dismissing § 1985 claim where plaintiff alleged "no facts suggesting a conspiratorial agreement or purpose," and noting that even though the Court "can infer that an agreement was made when direct evidence is lacking, such an inference must still be based on sufficient and plausible factual allegations.").

Daly also fails to allege anything to show that Defendants used force, intimidation, or threats to deter him from testifying. Unlike § 1983, but somewhat like the MCRA, a claim under § 1985(2) requires that the conspiracy seek to achieve its ends by use of "force, intimidation, or threat." Defendants are aware of no caselaw clearly defining these terms in the context of § 1985(2). But for reasons already discussed in the MCRA context, supra at § I, *5–8, Pinkham's warnings to Daly that MSP would schedule a Duty Status hearing and open an IA investigation, or his "expectation" that Daly would "likely" face a suspension without pay, are insufficient to constitute intimidation or threats as a matter of law. Cf. Thomas, 909 F.3d at 493. This is especially true where Daly could avail himself of many due process protections, including multiple levels of appeal. Supra at § III.A, *16–18. Count IV must therefore be dismissed.

Further, Daly's § 1985 conspiracy claim is barred by qualified immunity, which should be decided at the earliest possible stage in litigation. Haley, 657 F.3d at 47. Daly cannot sustain his burden of showing that several propositions of law are clearly established. First, given the paucity of allegations concerning the formation of a conspiracy, and the scant caselaw defining "force, intimidation, or threat" under § 1985(2), Daly cannot show it was clearly established law that his allegations suffice for the formation of a conspiracy, much less one involving force, intimidation, or threats. Indeed, the fact that there is a dearth of case law examining or interpreting § 1985(2) shows that this area of law is far from clear as a general matter, let alone that it is clearly established in the specific, unique circumstances alleged by Daly. Cf. Reichle v. Howards, 566 U.S. 658, 665 (2012) ("The 'clearly established' standard is not satisfied here. . . . [T]he right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." (quotations omitted)). Defendants can seek guidance from other relevant statutes, such as § 1983 and the MCRA, but there is nothing to

Defendants' knowledge in the context of § 1985(2) that shows the law was clearly established in the peculiar context presented in this case.

In short, it cannot be said that Defendants' actions reveal them to be "plainly incompetent" or as having committed knowing violations of § 1985. <u>Diaz-Bigio</u>, 652 F.3d at 50. Defendants are entitled to qualified immunity on Count IV.

**V.    Count V (Civil Conspiracy) Must Be Dismissed Because the Alleged Facts**
       <u>**Are Inadequate to Establish any Conspiracy.**</u>

Daly alleges in Count V that Defendants, "acting in concert with other co-conspirators, know and unknown, reached an agreement among themselves to deprive Plaintiff of his constitutional rights[.]" Dkt. 1, Compl., ¶ 65. Plaintiff also claims that the "misconduct" described in his complaint "was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth." <u>Id.</u> ¶ 68. "Massachusetts recognizes two types of civil conspiracy," the first is an independent tort, often called a "true conspiracy," while the second is "a form of vicarious liability for the tortious conduct of others." <u>Taylor v. Am. Chemistry Council</u>, 576 F.3d 16, 34 (1st Cir. 2009). Daly's Count V fails under either theory.

A "true conspiracy" under Massachusetts law "amounts to 'a very limited cause of action" that is "based on the defendants' allegedly unique ability to exert a peculiar power of coercion when acting in unison." <u>Snyder v. Collura</u>, 812 F.3d 46, 52 (1st Cir. 2016) (citations omitted). Under this theory, "the 'wrong' suffered by the plaintiff is 'in the particular combination of the defendants rather than in the tortious nature of the underlying conduct.'" <u>Id.</u> (quotation omitted). For conspiracy "[t]o rise to the level of an independent tort, the mere force of numbers acting in unison must make a wrong." <u>Kaiser v. Kirchick</u>, 662 F. Supp. 3d 76, 104 (D. Mass. 2023) (quotation omitted). "The plaintiff must show that defendants acting in combination had some

peculiar power of coercion that the same defendants acting alone would not have possessed." <u>Id.</u> (quotation omitted). Daly's allegations surely do not suffice to plead a "true conspiracy." Even taken as true, there is nothing in the complaint to suggest that Mawn, Mason and Pinkham had some "peculiar power of coercion" they would not have possessed otherwise—especially given the actual protections afforded by the Duty Status and IA procedures.[14]

The second type of conspiracy involves an agreement to commit an underlying tort. "For liability to attach" under this type of conspiracy, "there must be, first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." <u>Chaloupka v. Proximo Travel, LLC</u>, No. 21-40028-DHH, 2023 WL 5804255, at *3 (D. Mass. Feb. 24, 2023) (quotation omitted). Civil conspiracy "must be pled with particularity." <u>Ahanotu v. Mass. Tpk. Auth.</u>, 466 F. Supp. 2d 378, 389 (D. Mass. 2006). Daly fails to assert any factual allegations, let alone anything "with particularity," to demonstrate that Pinkham, Mason or Mawn agreed to carry out a plot against him. Daly's allegations that Defendants, acted "in concert with other co-conspirators, known and unknown," are wholly conclusory and entirely vague. <u>See</u> Dkt. 1, Compl., ¶ 65. Further, to the extent that the underlying tort here would be IIED, this claim is baseless for the reasons discussed <u>infra</u>, and Daly does not assert that Defendants committed any other tortious conduct. Count V is conclusory and insufficiently plead, and must be dismissed.

## VI. Count VI (Intentional Infliction Of Emotional Distress) Must Be Dismissed Because Daly's Pleading Does Nothing More Than Recite the Elements of the Claim.

Daly alleges in Count VI for IIED that Defendants engaged in conduct that "was extreme and outrageous, beyond the bounds of decency, and intolerable in a civilized community." Dkt. 1,

---

[14] The First Circuit explained in <u>Snyder v. Collura</u> that "[c]ollusive behavior among market competitors is a good example of one of those *rare instances*" where the "act of agreeing" itself "constitutes the wrong." 812 F.3d 46, 52 (1st Cir. 2016) (emphasis added) (citation omitted). This is nothing like the allegations asserted by Daly.

Compl., ¶¶ 71–72. But the complaint alleges nothing more to support this conclusory statement. This type of pleading is facially inadequate, as it is nothing more than a rote recitation of the elements of IIED, without any substantive allegations to support the claim.

To state an IIED claim, Daly must allege "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of the conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable person could be expected to endure it." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (edits and quotation omitted). The standard for making a claim of IIED "is very high." Id. (citation omitted); see also Polay v. McMahon, 468 Mass. 379, 385 (2014). An IIED claim "cannot be predicated" on indignities, threats, malice, or an intent that is tortious or even criminal. See Polay, 468 Mass. at 385. Indeed, "[c]onduct qualifies as extreme and outrageous *only* if it goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community." Id. (emphasis added) (edits and quotation omitted). "A judge may grant a motion to dismiss where the conduct alleged in the complaint does not rise" to the level of being outside all bounds of decency or regarded as atrocious and intolerable. Id.

There are no allegations that any of the Defendants acted with intent to inflict emotional distress on Daly. There is also no reasonable way to view Defendants' conduct as "extreme and outrageous," "atrocious," and "utterly intolerable in a civilized community." Daly's allegations that Pinkham "threatened" him with a Duty Status hearing and IA investigation, or that Pinkham said he "expected" that Daly would "likely" face a period of suspension without pay, cannot

plausibly be thought of as "extreme" or "beyond all possible bounds of decency." Further, Defendants were senior officers of MSP, and had a duty to investigate potential wrongdoing within the force; their intent to open an IA investigation and hold a Duty Status hearing was a proper exercise of their duties. Cf. Fountain v. City of Methuen, 630 F. Supp. 3d 298, 319 (D. Mass. 2022) (dismissing IIED claim and finding that plaintiff "failed to establish that [defendant's] conduct was extreme and outrageous" where defendant was acting pursuant to a public duty).

Lastly, Daly fails to assert any facts other than conclusory allegations that he suffered distress "so severe and of a nature that no reasonable person could be expected to endure it." His pleading contains no allegations showing any emotional, psychological, or mental harm; nor allegations that Daly sought any treatment or support for any harm; nor that any harm was "so severe" that Daly could not "be expected to endure it." See Polay, 468 Mass. at 388 ("The plaintiffs also fail sufficiently to allege severe emotional distress. Other than referring to the plaintiffs' emotional distress as 'extreme,' the complaint contains only the conclusory statement that 'the emotional distress suffered by the [p]laintiffs was severe and of such a nature that no reasonable person could be expected to endure it.' This statement does not constitute an allegation of fact but rather a recitation of the element of severe emotional distress. Such 'bare assertions' do not suffice." (citations omitted)). Count VI must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants, in their individual capacities, respectfully ask this Honorable Court to:

1. DISMISS the complaint of Plaintiff Andrew J. Daly with prejudice; and

2. Grant such further Legal and Equitable relief as this Court deems just and proper.

Respectfully submitted,

DEFENDANTS

CHRISTOPHER S. MASON,
JOHN D. PINKHAM, and JOHN E. MAWN
In their Individual Capacities,

by their attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

 */s/ Nadav S. Pearl*
Nadav S. Pearl, BBO No. 707592
Assistant Attorney General
Aaron Dulles, BBO No. 681530
Assistant Attorney General
Massachusetts Office of the Attorney General
One Ashburton Place
Boston, MA 02108
Nadav.Pearl@mass.gov | (617) 963-2881
Aaron.Dulles@mass.gov | (413) 523-7703

Dated: February 23, 2024

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on February 23, 2024, this document, and any exhibits and attachments thereto, have been filed through the CM/ECF system, so as to result in service upon all participants registered as ECF users by transmission of a Notice of Electronic Filing.

 */s/ Nadav S. Pearl*
Nadav S. Pearl
Assistant Attorney General