UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDREW J. DALY,<br><br>       Plaintiff,<br><br>v.<br><br>CHRISTOPHER S. MASON, individually;<br>JOHN D. PINKHAM, individually and as<br>Lt. Colonel of Standards of Training for the<br>Massachusetts State Police; and<br>JOHN E. MAWN, individually and as<br>Colonel of the Massachusetts Department of<br>State Police,[1]<br><br>       Defendants. | C.A. No. 4:23-cv-40162-MRG |

**MEMORANDUM OF MASSACHUSETTS STATE POLICE
DEFENDANTS IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants Massachusetts State Police ("MSP"), John E. Mawn in his official capacity as Colonel of MSP, and John D. Pinkham in his official capacity as Lt. Colonel of Standards of Training of MSP (collectively, "MSP Defendants"), submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff Andrew J. Daly's complaint pursuant to Fed. R. Civ. P. 12(b)(1).[2] Daly brings six counts for relief in his complaint: violation of the Massachusetts Civil Rights Act (Count I), claims for deprivation of his First and Fourteenth Amendment rights under 42 U.S.C. § 1983 (Counts II and III), conspiracy to interfere with his constitutional rights under

---

[1] Defendant Christopher S. Mason retired from MSP in February 2023. By operation of Fed. R. Civ. P. 25(d), Mawn, who is the current Colonel of MSP, substitutes Mason as the defendant to the official capacity claim.

[2] Daly names Pinkham, Mason, and Mawn in their official capacities and their individual capacities. An official capacity suit is, in all respects but name, a lawsuit against the entity itself, in this case MSP. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). Pinkham, Mason, and Mawn have filed a separate Motion to Dismiss the individual capacity claims, along with a Memorandum of Law in Support of that Motion. Dkt. Nos. 16, 17.

42 U.S.C. § 1985 (Count IV), and tort claims of civil conspiracy (Count V) and intentional infliction of emotional distress (Count VI).

To the extent that Daly seeks monetary relief, all counts of his complaint against MSP Defendants are barred by the Eleventh Amendment and sovereign immunity. MSP Defendants have not consented to suit or waived their sovereign immunity, and Congress has not unambiguously abrogated that sovereign immunity. To the extent Daly's state law claims—Counts I, V, and VI—seek injunctive relief in the form of reinstatement, those claims are also barred by the Eleventh Amendment because the Ex Parte Young exception does not apply to official capacity claims based on state law. And to the extent that Daly's federal law claims—Counts II, III, and IV—seek injunctive relief in the form of reinstatement, such relief is not available to Daly where the underlying claims should be dismissed for failure to state a claim, as detailed in the Individual Defendants' Motion to Dismiss and accompanying Memorandum of Law. Dkt. Nos. 16, 17.

## **ALLEGATIONS**[3]

Daly was an officer with MSP between 2000 and 2022. Dkt. 1, Compl., ¶ 8. At the time the allegations begin in 2018, Christopher Mason was Colonel and Pinkham was Lieutenant Colonel for Standards and Training at MSP. Id. ¶¶ 5–6. Notwithstanding Daly's confusing allegation that Mawn was also Colonel in 2018 (id. ¶ 7), in actuality Mawn assumed that role in February 2023, following Mason's retirement.[4]

---

[3] The allegations are taken as true for present purposes only.

[4] See *Governor Healey and Lt. Governor Driscoll Appoint John E. Mawn, Jr. as Massachusetts State Police Interim Colonel*, Executive Office of Public Safety and Security (February 17, 2023), https://www.mass.gov/news/governor-healey-and-lt-governor-driscoll-appoint-john-e-mawn-jr-as-massachusetts-state-police-interim-colonel. This Court may take judicial notice of this official Commonwealth press release concerning Mawn's promotion, whether as a public record and/or as a document whose authenticity cannot reasonably be disputed. See, e.g., Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (in considering dismissal under Fed. R. Civ. P. 12(b)(6), this Court "may augment [pled] facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."); see also Fed. R. Evid. 201(b).

In 2018, the USAO initiated a criminal investigation into the State Police Association of Massachusetts ("SPAM"), the collective bargaining unit for noncommissioned MSP officers, as well as into SPAM's then-president, Dana Pullman ("Pullman"). Id. ¶¶ 9, 11, 13. Daly was SPAM treasurer at that time, and had already served on SPAM's executive board for roughly ten years. Id. ¶¶ 10–11, 27. Daly did not receive a target letter from the USAO, but he cooperated with prosecutors under an immunity agreement. Id. ¶¶ 12, 14–15. Daly alleges that he "required that the immunity agreement NOT BE extended to him in exchange to avoid prosecution [*sic*]" (capitals in original), and that the USAO "agreed and maintained that Daly had not conspired with SPAM's president," but the immunity agreement itself does not reflect this. Compare id. ¶ 15 with Ex. 1, Immunity Agreement.[5] As a cooperator with the USAO, Daly met with prosecutors and testified before a grand jury. Dkt. 1, Compl., ¶ 16.

Daly resigned as SPAM treasurer in July 2019, about a year into the USAO's investigation. Id. ¶ 18. In September 2019, just two months after Daly's resignation, the prosecutors issued a fifty-page indictment against Pullman, charging him with a host of counts all chiefly financial in nature, such as wire fraud, conspiracy to defraud, and aiding and abetting false tax returns. See id. ¶ 17; see also Ex. 2, Indictment.[6] The indictment did not identify Daly by name, but referred to him throughout as "The Treasurer." Ex. 2, Indictment, ¶¶ 19, 41–42, 49, 56–59. In May 2022, prosecutors "requested" that Daly testify at Pullman's trial, which was set for October 2022. Dkt. 1, Compl., ¶ 22. Daly informed "the defendants" that he received a subpoena, and they "authorized" him to prepare for his trial testimony. Id. ¶¶ 23–24.

---

[5] This Court may take judicial notice of the immunity agreement because it is sufficiently referred to in the complaint, such that it is incorporated by reference, and its authenticity cannot reasonably be disputed. Haley, 657 F.3d at 46; Fed. R. Evid. 201(b).

[6] This Court may take judicial notice of the indictment, a public record. Haley, 657 F.3d at 46; Fed. R. Evid. 201(b).

On an unspecified date in July 2022, Pinkham "met with Daly and told him that on July 19, 2022, he would be placed on administrative leave," and that a "Duty Status" hearing would be scheduled for July 21.[7] Id.¶ 25. Pinkham also allegedly told Daly that "he could expect to be suspended," either with or without pay. Id. At some unspecified point in time, Pinkham told Daly that "the defendants" were "concerned" about what might come out during Daly's trial testimony, and that "he intended" to initiate an IA investigation into Daly's "conduct." Id. ¶ 26. Over the weekend before Daly's Duty Status hearing, Pinkham allegedly "informed" Daly that the IA investigation would "likely" result in suspension without pay and a demotion. Id. ¶ 30.

Daly retired on July 18, 2022, before the Duty Status hearing and prior to commencement of any IA investigation. Id. ¶ 32. In support of his conclusory allegation that his retirement was "coerced," Daly states he was "aware," by virtue of his experience on SPAM's executive board, that "a very low percentage of officers" are suspended with pay following Duty Status hearings, as well as his understanding that if he retired while an IA investigation was underway, he would not be eligible for retirement benefits and may not receive an Honorable Discharge. Id. ¶¶ 27–32. After retiring, Daly testified at Pullman's criminal trial in October 2022. On November 3, 2022, a jury found Pullman guilty on all counts, including wire fraud, conspiracy to defraud the United States, and aiding and assisting in filing false tax returns. See Ex. 3, Verdict.[8]

On or about May 25, 2023, Daly sought permission from Mawn, who had become Colonel a few months earlier, to un-retire and re-join MSP. Id. ¶ 33. Mawn declined to rehire Daly on August 4, 2023. Id. ¶ 34. Daly now sues, asserting that Defendants violated his constitutional rights

---

[7] MPS holds a Duty Status hearing when concerns arise about an officer's fitness to perform their duties, or to do so without discredit or embarrassment to the force, and/or where there is an Internal Affairs investigation ("IA investigation") of the officer. There are four possible results for the officer's status: full duty, restricted (desk) duty, suspension with pay, and suspension without pay. See Ex. 4, MSP Rules & Regs. §§ 6.1.1, 6.2.1(2), 6.2.4.

[8] This Court may take judicial notice of the verdict, a public record. Haley, 657 F.3d at 46; Fed. R. Evid. 201(b).

and committed various torts when they "coerced" him to retire, including: violation of the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12 §§ 11H and 11I (Count I); retaliation for engaging in protected speech under the First Amendment (Count II); deprivation of employment without due process in violation of the Fourteenth Amendment (Count III); conspiracy to interfere with civil rights under 42 U.S.C. § 1985 (Count IV); as well as torts of civil conspiracy and intentional infliction of emotional distress ("IIED") (Counts V and VI). Id. ¶¶ 36–74. Daly asserts all claims against all Defendants, making no distinction between official and individual capacity claims. Id. In addition to compensatory and punitive damages, and attorneys' fees, Daly seeks equitable relief in the form of an "order that he be reinstated to the Department of State Police without any loss of rank or compensation." Id. at 11, Prayer for Relief (c).

## STANDARD OF REVIEW

The Court reviews a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). See, e.g., Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). As the party asserting jurisdiction, Daly bears the burden of demonstrating that subject matter jurisdiction exists. Id. In reviewing the complaint, the Court treats "all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences." Id. However, the plaintiff "may not rest merely on unsupported conclusions or interpretations of law," and "[s]ubjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts will not defeat a motion to dismiss." Id. (quotation omitted). Lastly, in "resolving" state-law claims, this Court must "apply federal procedural law and state substantive law." Haley v. City of Boston, 657 F.3d 39, 53 (1st Cir. 2011).

## ARGUMENT

The Constitution "specifically recognizes the States as sovereign entities." <u>Alden v. Maine</u>, 527 U.S. 706, 713 (1999) (quotation omitted). The Eleventh Amendment states: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. "Long interpreted as an affirmation of state sovereign immunity . . . [the] amendment (despite its literal text) also bar[s] a citizen from bringing a federal court action against his or her own State," <u>Maysonet-Robles v. Cabrero</u>, 323 F.3d 43, 48 (1st Cir. 2003), including state officials sued in their official capacities, <u>see</u> <u>Mills v. State of Maine</u>, 118 F.3d 37, 54 (1st Cir. 1997). The Eleventh Amendment generally guarantees that "non-consenting States may not be sued by private individuals in federal court." <u>Board of Trs. of Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 363 (2001); <u>see</u> also <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984) ("It is clear . . . that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

Additionally, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985). "This means, of course, that a public official, sued only in his official capacity, is a proxy for the government entity that employs him and is in privity with that entity." <u>Goldstein v. Galvin</u>, 719 F.3d 16, 23 (1st Cir. 2013) (citation omitted). Daly's official capacity claims are therefore treated as against MSP, the employing agency, and by extension as claims against the Commonwealth itself. <u>See</u> <u>Miller v. City of Boston</u>, 297 F. Supp. 2d 361, 368 (D. Mass. 2003). The Commonwealth is immune from suit under the Eleventh Amendment unless Congress "unequivocally intends" to abrogate the

immunity. See Garrett, 531 U.S. at 363. Further, the Commonwealth retains its immunity from suit under state law "unless it waives its right to sovereign immunity and consents to being sued" by state statute, in which case "it can be sued only in the manner and to the extent expressed by the statute." Irwin v. Commonwealth, 465 Mass. 834, 840 (2013) (quotation and edits omitted).

To the extent that Daly's claims seek monetary relief, all of his claims are barred by the Eleventh Amendment and the Commonwealth's sovereign immunity. Insofar as he seeks injunctive relief in the form of reinstatement under state law in Counts I, V and VI, those claims are likewise barred by the Eleventh Amendment. Finally, Daly's claims for injunctive relief pursuant to federal law in Counts II, III and IV, should be dismissed because the underlying claims fail under Fed. R. Civ. P 12(b)(6), for the reasons discussed in Mason, Mawn and Pinkham's individual capacity Motion to Dismiss and accompanying Memorandum of Law. Dkt. Nos. 16, 17.

I. **Counts II, III and IV, Arising Under 42 U.S.C. §§ 1983 and 1985, Are Barred by the Eleventh Amendment, to the Extent they Seek Monetary Relief.**

Daly's Counts II, III, and IV, brought pursuant to §§ 1983 and 1985, are barred the Eleventh Amendment to the extent they seek monetary relief against MSP. The Commonwealth's sovereign immunity forecloses "claims brought under 42 U.S.C. §§ 1981, 1983, and 1985" for damages "as there has been no congressional abrogation of sovereign immunity as to those types of claims." Nakanwagi v. Exec. Off. of the Trial Ct., No. 23-10533-FDS, 2024 WL 38749, at *3 (D. Mass. Jan. 3, 2024) (citing Johnson v. Walgreen, 980 F.2d 721 (1st Cir. 1992) (per curiam)). Furthermore, MSP is not a "person" within the meaning of §§ 1983 or 1985, and is therefore not subject to suit for damages under those provisions. See, e.g., Santiago v. Keyes, 839 F. Supp. 2d 421, 427–28 (D. Mass. 2012). Therefore, Daly's claims under §§ 1983 and 1985 against MSP Defendants for monetary relief are barred by the Eleventh Amendment. Counts II, III, and IV must be dismissed.

**II.     Counts I, V, and VI, based on Massachusetts State Law, are Barred by the Eleventh Amendment to the Extent they Seek Monetary Relief, Because MSP Defendants Have Not Consented to Suit, and the Commonwealth Has Not <u>Waived Its Sovereign Immunity</u>.**

Daly's state law claims for monetary relief against MSP Defendants—Counts I, V, and VI— are also barred by the Eleventh Amendment because MSP Defendants have not consented to suit, the Commonwealth has not waived its sovereign immunity under the MCRA, and the Commonwealth has not waived its sovereign immunity for tort-based claims brought in federal court, and has explicitly retained its sovereign immunity for intentional torts. The only exceptions to the clear Eleventh Amendment bar are cases where the state has consented to suit, has waived its immunity, or where Congress has unambiguously abrogated immunity. <u>Brait Builders v. Mass. Div. of Capital Asset Mgmt.</u>, 644 F.3d 5, 11 (1st Cir. 2011). The Eleventh Amendment also bars claims against individuals named in their official capacity absent consent, waiver, or an unambiguous abrogation of immunity. <u>Coggeshall v. Mass. Bd. of Reg. of Psych.</u>, 604 F.3d 658, 662 (1st Cir. 2010); <u>Rosie D. ex rel. John D. v. Swift</u>, 310 F.3d 230, 234 (1st Cir. 2002).

Count I for monetary relief is barred by the Eleventh Amendment because the Commonwealth has not waived its sovereign immunity to claims under the MCRA. The MCRA "provides a right of action to any person whose exercise or enjoyment of rights secured by the federal or state constitutions or laws has been interfered with by 'threats, intimidation or coercion.'" <u>Thomas v. Harrington</u>, 909 F.3d 483, 492 (1st Cir. 2018). "There is nothing in [the MCRA] that even suggests that the Legislature intended a waiver of sovereign immunity." <u>Commonwealth v. Elm Med. Labs., Inc.</u>, 33 Mass. App. Ct. 71, 79 (1992). It is established that "the Commonwealth, including its agencies, is not a 'person' subject to suit" under the MCRA. <u>Williams v. O'Brien</u>, 78 Mass. App. Ct. 169, 173 (2010); <u>see also</u> <u>Boulais v. Massachusetts,</u>

No. CIV. A. 00-CV-12086, 2002 WL 225936, at *2 (D. Mass. Jan. 30, 2002) (dismissing claim as "barred [where] Commonwealth is not a 'person' within the meaning of the [MCRA]").

Counts V and VI, seeking monetary relief for intentional torts, are likewise barred by the Eleventh Amendment, because the Commonwealth has not waived its sovereign immunity for tort-based claims brought in federal court and has explicitly retained its sovereign immunity for intentional torts in the Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258. The MTCA is a "limited waiver" of the Commonwealth's sovereign immunity only for negligence-based claims brought against a "public employer" such as MSP, and only in state Superior Court. See Morrissey v. Massachusetts, C.A. No. 18-11386-MBB, 2022 WL 1463051, at *13 (D. Mass. May 9, 2022) ("The Massachusetts Supreme Judicial Court definitively holds that the MTCA grants exclusive jurisdiction over claims brought under the statute to the Commonwealth's Superior Courts." (quotation omitted)); M.G.L. c. 258 § 3 ("The superior court shall have jurisdiction of all civil actions brought against a public employer."). Furthermore, "[b]y enacting the [MTCA], the Commonwealth has not waived its Eleventh Amendment immunity to suit in federal court." Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003). Therefore, "this Court lacks jurisdiction—either original or supplemental," over tort-based claims against the MSP Defendants. Rivera v. Massachusetts, 16 F. Supp. 2d 84, 88 (D. Mass. 1998); see also Morrissey, 2022 WL 1463051, at *13 ("the First Circuit and courts in this district consistently hold that claims brought under the MTCA in federal court ought to be dismissed." (edits and quotation omitted)). Daly cannot "avoid" this jurisdictional bar by attempting to frame tort claims as arising at common law. See Morrissey, 2022 WL 1463051, at *13 (quotation omitted).

Moreover, the MTCA "expressly exempts intentional torts from its provisions, and therefore a public employer cannot be sued for the intentionally tortious conduct of its employee."

Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623, 626 (2012) (citing M.G.L. c. 258 § 10(c)). Civil conspiracy and IIED are both intentional torts precluded by § 10(c). See M.G.L. c. 258 § 10(c) (the limited waiver of sovereign immunity "shall not apply to . . . any claim arising out of an intentional tort, including . . . intentional mental distress"); Leatham v. Donell, No. 95-4539B, 1996 WL 1251390, at *2 (Mass. Super. Ct. Aug. 9, 1996) (civil conspiracy is "contemplated . . . by the language of § 10(c) in that the essence a [*sic*] civil conspiracy claim is the intent to act in concert with another to the detriment of a third party."); Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 286 (1985) ("plaintiff's claims . . . [for] intentional infliction of emotional distress were properly dismissed because public employers are immune from such suits" under § 10(c)).

Daly's state law claims against the MSP Defendants for monetary relief, both under the MCRA and the MTCA, are barred by the Eleventh Amendment, and the Commonwealth has not waived its immunity to such claims. Counts I, V, and VI must be dismissed.

**III.   Plaintiff's Demand for Equitable Relief Must be Dismissed for State Law Claims (Counts I, V and VI) Because it is Barred by the Eleventh Amendment, and for Federal Claims (Counts II, III, and IV) Because He Fails to State a Claim.**

Daly's claims against MSP Defendants for equitable relief in the form of "reinstatement" also fail. The Supreme Court "carved out an exception to Eleventh Amendment state immunity" in its seminal decision of Ex Parte Young, which permits "federal courts to 'enjoin state officials to conform their future conduct to the requirements of federal law.'" Whalen v. Mass. Trial Court, 397 F.3d 19, 28 (1st Cir. 2005) (quoting Quern v. Jordan, 440 U.S. 332, 337 (1979)); see also Ex Parte Young, 209 U.S. 123 (1908). Ex Parte Young is a "narrow" doctrine, regarded as creating a "necessary exception to Eleventh Amendment immunity." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, 506 U.S. 139, 146 (1993) (citation omitted). The exception "applies only to

prospective relief," and "does not permit judgments against state officers declaring that they violated federal law in the past[.]" Id. (citation omitted).

To the extent that Daly seeks injunctive relief as remedy for alleged violations of the MCRA, civil conspiracy, and IIED (Counts I, V, and VI), he cannot get injunctive relief for those state law claims because it is clear that Ex Parte Young is "inapplicable in a suit against state officials on the basis of state law." Pennhurst, 465 U.S. at 106. Therefore, Counts I, V and VI must be dismissed in their entirety. Insofar as Daly seeks injunctive relief as remedy for alleged violations of §§ 1983 and 1985 (Counts II, III and IV), this demand must be dismissed because the underlying constitutional claims are deficient, where Daly fails to state a claim upon which relief can be granted. As discussed in the Individual Defendants' Motion to Dismiss and accompanying Memorandum of Law, Plaintiff's federal claims should be dismissed under Rule 12(b)(6) for failure to state a claim, and because qualified immunity bars his federal claims. The Court should dismiss Daly's Counts II, III and IV, extinguishing any injunctive remedy Daly seeks pursuant to those Counts.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Honorable Court dismiss all Counts asserted in Plaintiff's complaint against Defendants in their official capacity, including monetary and injunctive relief.

Respectfully submitted,

DEFENDANTS

JOHN D. PINKHAM, in his Official Capacity as Lt. Colonel of Standards of Training for the Massachusetts State Police; and
JOHN E. MAWN, in his Official Capacity as Colonel for the Massachusetts State Police,

by their attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

  /s/ Nadav S. Pearl
Nadav S. Pearl, BBO No. 707592
Assistant Attorney General
Aaron Dulles, BBO No. 681530
Assistant Attorney General
Massachusetts Office of the Attorney General
One Ashburton Place
Boston, MA 02108
Nadav.Pearl@mass.gov | (617) 963-2881
Aaron.Dulles@mass.gov | (413) 523-7703

Dated: February 23, 2024

### CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on February 23, 2024, this document, and any exhibits and attachments thereto, have been filed through the CM/ECF system, so as to result in service upon all participants registered as ECF users by transmission of a Notice of Electronic Filing.

  /s/ Nadav S. Pearl
Nadav S. Pearl
Assistant Attorney General