# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDREW J. DALY,<br><br>                                    Plaintiff,<br><br><br>                    v.<br><br><br>CHRISTOPHER S. MASON, individually;<br>JOHN DANIEL PINKHAM, individually and<br>as Lt. Colonel of Standards and Training of the<br>Massachusetts State Police; and<br>JOHN E. MAWN, JR., individually and as<br>Colonel of the Massachusetts Department of<br>State Police,[1]<br><br>                                    Defendants. | Civil Action No. 4:23-cv-40162-MRG |

## <u>MEMORANDUM AND ORDER</u>

**GUZMAN, J.**

Presently before the Court is a Motion to Dismiss for failure to state a claim filed by

Defendants Christopher S. Mason ("Mason"), John D. Pinkham ("Pinkham"), and John E.

Mawn, Jr. ("Mawn") (collectively, "Defendants") pursuant to Fed. R. Civ. P. 12(b)(6). [ECF No.

16.] For the reasons stated below, the Court **<u>GRANTS</u>** in part and **<u>DENIES</u>** in part the motion.

### I.    Background and Procedural History

The Court adopts the recitation of the facts and procedural history referenced in its

Memorandum and Order on Defendants' Motion to Dismiss for Lack of Subject Matter

Jurisdiction. [ECF No. 26.]

---

[1] As stated in the Court's Memorandum and Opinion on the Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, [ECF No. 26 at 1 n.1], because Defendant Mason no longer holds his official position, his successor, Defendant Mawn, is automatically substituted for purposes of the official capacity claims. Fed. R. Civ. P. 25(d).

## II.     Legal Standard

A complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). But under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action arguing that it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).

On a motion to dismiss made pursuant to Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and the Court draws "all reasonable inferences in favor of the plaintiff." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (citing Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992)).

## III.     Discussion

Plaintiff brings both federal and state claims in this action. Accordingly, the Court will address the federal and state claims separately. Plaintiff brings two federal claims under 42

U.S.C. § 1983: Count II alleges a violation of Plaintiff's First Amendment rights and Count III alleges violation of Plaintiff's Due Process rights under the Fourteenth Amendment.[2]

In addition, Plaintiff brings a claim of Conspiracy to Interfere with Civil Rights pursuant to 42 U.S.C. § 1985. Defendants assert a defense of qualified immunity to these federal claims, so the Court will address the merits for each federal claim. Count I of Plaintiff's action alleges a violation of the Massachusetts Civil Rights Act. In addition to the federal conspiracy claim, Plaintiff brings a claim of civil conspiracy under Massachusetts law in Count V. Lastly, Plaintiff alleges Intentional Infliction of Emotional Distress under Massachusetts law in Count VI. The Court first turns to the federal claims.

### A. Federal Claims

#### a. Section 1983 Claims

Section 1983 "is a vehicle through which individuals may sue certain persons for depriving them of federally assured rights, such as the First Amendment's right to free speech or of the Fourteenth Amendment's right to procedural due process." Gagliardi, 513 F.3d at 306. In order to succeed on a Section 1983 claim, a plaintiff must show that defendants acted under the color of state law, and that his or her conduct deprived plaintiff of rights secured by the Constitution or by federal law. Id. (citing Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997)). Vicarious liability is inapplicable to Section 1983 claims. See Welch v. City of Biddeford Police Dep't, 12 F.4th 70, 75-76 (1st Cir. 2021) ("Officers are not liable under § 1983 for the actions of other officers"). As such, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft

---

[2] Although the Complaint describes Count III as a "42 U.S.C. § 1983 – First and Fourteenth Amendments" violation, [ECF No. 1 at 8], the Parties only address in their briefing an alleged due process violation under the Fourteenth Amendment.

v. Iqbal, 556 U.S. 662, 676 (2009). The federally protected rights at issue here are Plaintiff's First Amendment right to freedom of speech and Fourteenth Amendment right to due process.

As an initial matter, the Court finds the First and Fourteenth Amendment claims against Defendants Mason and Mawn must fail because the Complaint fails to plead an actionable claim against them. See id. Plaintiff alleges generally that he was coerced into early retirement as a result of Defendants' intentional or reckless actions. [ECF No. 1 ¶¶ 47-49, 55-56.] As Defendants rightly point out, the Complaint only references Mason once to introduce him as the Colonel of the Massachusetts State Police ("MSP"). [ECF No. 1 ¶ 5.] And Mawn is mentioned only twice in the Complaint, first to introduce him as Colonel of MSP and then to assert that he refused to reinstate Plaintiff. [ECF No. 1 ¶¶ 7, 33-34.] Although the Complaint devotes three additional paragraphs to allegations pertaining to Defendants collectively, [ECF No. 1 ¶¶ 23-24, 26], none of these bare assertions identify an affirmative act by Mason and Mawn, individually, that might arguably constitute intentional or reckless behavior to coerce Plaintiff into retiring from the MSP. See Iqbal, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Moreover, the Complaint fails to show that Mason's and Mawn's supervisory function was sufficient to show individual involvent and establish a basis for supervisory liability. See Ramírez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19-20 (1st Cir. 2014) ("After Iqbal, as before, we have stressed the importance of showing a strong causal connection between the supervisor's conduct and the constitutional volation."). Accordingly, the Court will grant Defendant's motion and dismiss Counts II and III of the Complaint against Defendants Mason and Mawn.

We turn now to analyzing this Claims against Defendant Pinkham.

### i.   Count II (First Amendment)

"When a government actor retaliates against someone for exercising constitutionally protected First Amendment rights, that individual has a cognizable retaliation claim pursuant to § 1983." Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 141 (1st Cir. 2016) (citing Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004)). Although retaliation is not expressly referenced in the First Amendment, it is "nonetheless actionable because retaliatory actions may tend" to have a chilling effect in the "exercise of constitutional rights." Powell, 391 F.3d at 16-17 (quoting ACLU of Md. v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993)). The First Circuit applies a three-pronged test to determine whether a challenged action violated a public employee's First Amendment right to freedom of speech. See Curran v. Cousins, 509 F.3d 36, 44-45 (1st Cir. 2007). To make out a valid First Amendment claim, a court must first determine whether the employee "spoke as a citizen on a matter of public concern." Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 765 (1st Cir. 2010) (quoting Curran, 509 F.3d at 45). Second, if the speech concerns matters of public concern, the court must "balance … the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. (alteration in original) (quoting Curran, 509 F.3d at 44). And third, the employee must "show that the protected expression was a substantial or motivating factor in the adverse employment decision." Id.

Turning to the substance of the alleged First Amendment violation, the parties only dispute the second element of the test—whether Plaintiff's interest in testifying against the president of SPAM outweighed Defendants' interest in initiating an internal investigation into Plaintiff's potential misconduct. Defendants do not dispute that Plaintiff had an interest in

testifying against SPAM's president. Indeed, "the First Amendment protects a public employee who provides truthful sworn testimony, compelled by subpoena, outside the scope of his ordinary job responsibilities …. That is so even when the testimony relates to his public employment[.]" Lane v. Franks, 573 U.S. 228, 238 (2014). Instead, Defendants assert that the MSP had a stronger interest in inquiring into Plaintiff's potential misconduct in his role as SPAM's treasurer. As justification, Defendants posit that the MSP has a duty to ensure that its officers comply with applicable law and policy standards, as officer misconduct potentially disrupts the normal operations of the MSP, an interest that is also shared by the public. [ECF No. 17 at 9-10.]

While the government has a legitimate interest in the "effective and efficient fulfillment of its responsibilities to the public[,]" including promoting efficiency and intregrity in the discharge of official duties and maintaining proper discipline in public service, "a stronger showing may be necessary if the employee's speech more substantially involved matters of public concern." Connick v. Myers, 461 U.S. 138, 150-52 (1983). In analyzing the government's interest, a court may consider a number of factors, including "(1) the time, place, and manner of the employee's speech, and (2) the employer's motivation in making the adverse employment decision." MacRae v. Mattos, 106 F.4th 122, 136-37 (1st Cir. 2024).

Here, it is important to place Plaintiff's speech in context because the parties were made aware of the U.S. Attorney's investigation into SPAM and its president, and potentially the Plaintiff, beginning in 2018. [ECF No. 1 ¶¶ 11, 13.] The following year, in September 2019, SPAM's president was indicted on charges of conspiracy, wire fraud, racketeering, and

obstruction. [ECF No. 1 ¶ 17.] As the Defendants note, the indictment[3] against SPAM's

president outlined a number of financial crimes that repeatedly referenced the Plaintiff as the

"Treasurer." [ECF No. 17 at 10.] With the benefit of additional information, the Defendants were

thus on notice of Plaintiff's potential misconduct in his role as SPAM's treasurer. Nevertheless,

it was not until July 2022, approximately three months before Plaintiff was due to testify at the

criminal trial, that Defendant Pinkham informed Plaintiff that he would be placed on

administrative leave pending a Duty Status hearing and that the MSP would initiate an internal

investigation into Plaintiff's potential misconduct. [ECF No. 1 ¶¶ 25-26.] Defendant Pinkham

explained to Plaintiff that the Defendants were concerned about what would potentially be

revealed at trial through his testimony. [ECF No. 1 ¶ 26.] Plaintiff retired shortly thereafter.

[ECF No. 1 ¶ 32.]

  Relying on <u>Lane</u>, Defendants focus on the possible misconduct for which Plaintiff

received immunity. In that case, the Supreme Court acknowledged in a footnote that

"wrongdoing that an employee admits to while testifying may be a valid basis for termination or

other discipline." <u>Lane</u>, 573 U.S. at 242 n.5. Defendants' reliance on <u>Lane</u>, however, is

inapposite because it does not address wrongdoing that an employee might potentially admit to

in the future. Defendants do not otherwise cite to any case supporting their proposition or point

to any facts showing that their interest in safeguarding the regular operations of the MSP

surpassed Plaintiff's interest in testifying under oath on a matter of public concern. Even

assuming <u>arguendo</u> that Plaintiff would go on to admit his own wrongdoing at the criminal trial

of SPAM's president, Defendants offer no explanation for the three-year delay in investigating

---

[3] The Court takes judicial notice of the indictment in <u>United States v. Pullman</u>. Indictment as to Dana Pullman, <u>United States v. Pullman</u>, No. 1:19-CR-10345-DPW (D. Mass. Nov. 3, 2022), ECF No. 17; <u>see</u> Fed. R. Evid. 201(b)(2); <u>see</u> <u>Mazzarino</u>, 616 F. Supp. 3d at 124 n.4; <u>Madison</u>, 393 F. Supp. 3d at 137, 137 n.2; <u>see also</u> [ECF No. 16-2].

Plaintiff's actions in his role as SPAM's treasurer. Moreover, while the Court recognizes that the MSP has a legitimate interest in assuring that its officers comply with applicable law and regulations in the fulfillment of their official duties, see Connick, 461 U.S. at 150-51, it is questionable how Plaintiff's potential admission would disrupt the operations of the MSP, particularly in light of the three-year delay and the fact that the indictment "gained significant media attention" when it became public. [ECF No. 17 at 10.] Indeed, by July 2022, the case against SPAM's president had been litigated for multiple years. Further, it is not clear whether Plaintiff's duties as SPAM's treasurer interacted at all with his duties as MSP Captain such that any potential misconduct in his capacity as treasurer could have a negative impact in the effective operation of the MSP.

Defendants do not assert any facts that tip the balance in their favor. Accordingly, Defendants' motion will be denied as to Count II as it pertains to Defendant Pinkham.

### ii.    Count III (Due Process)

The Due Process Clause of the Fourteenth Amendment "has both procedural and substantive components." DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005). Procedural due process "ensures that government, when dealing with private persons, will use fair procedures." Id. (citing Fuentes v. Shevin, 407 U.S. 67, 80-82 (1972)). Substantive due process "safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them. Id. (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)). The Complaint alleges that Plaintiff was deprived of his due process rights during the events leading to his retirement when Defendant Pinkham told him that he would be placed on administrative leave and that there would be a Duty Status hearing at which Plaintiff

could expect to be suspended. [ECF No. 1 ¶ 25.] We will thus analyze both due process components.

### 1. Procedural Due Process

In order to establish a valid procedural due process claim, a plaintiff must show that he or she "was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." Maymi v. P.R. Ports Auth., 515 F.3d 20, 29 (1st Cir. 2008). The Fourteenth Amendment "affords due process protections to public employees who possess property interests in continued public employment." Galloza v. Foy, 389 F.3d 26, 33 (1st Cir. 2004) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)). Although a voluntary and uncoerced resignation, even one prompted by events set in motion by an employer, precludes a procedural due process claim, an involuntary resignation is subject to procedural protections. See Oberg v. City of Taunton, 972 F. Supp. 2d 174, 200-01 (D. Mass. 2013) (citing Monahan v. Romney, 625 F.3d 42, 47 (1st Cir. 2010)). A court must thus look "to the circumstances of the resignation to determine whether the employee was denied the opportunity to make a free choice." Dobelle v. Flynn, 12 F. Supp. 3d 274, 288-89 (1st Cir. 2014) (citation omitted). Moreover, it is well settled that "[i]n order to prevail on a claim of a deprivation of procedural due process, 'the [plaintiff] must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate.'" Lamoureux v. Haight, 648 F. Supp. 1169, 1175 (D. Mass. 1986) (quoting Hudson v. Palmer, 468 U.S. 517, 539 (1984) (O'Connor, J., concurring)). Because a constitutional violation does not occur unless and until the government fails to provide due process, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate." Zinermon v. Burch, 494 U.S. 113, 126 (1990).

The parties do not dispute that Plaintiff had a property interest in his employment with MSP. Where the parties disagree is whether the due process afforded to Plaintiff was constitutionally adequate. As stated in the Complaint, Defendant Pinkham, who was the Lieutenant Colonel of Standards and Training, informed Plaintiff that he would be placed on administrative leave and that he would be subject to a Duty Status hearing "at which he could expect to be suspended; the only question being whether he would be suspended with or without pay." [ECF No. 1 ¶¶ 6, 25.] In the days preceding the Duty Status hearing, Plaintiff was informed that Defendant Pinkham "expected Daly would likely be facing a period of suspension without pay and demotion from the rank of captain after the internal affairs investigation." [ECF No. 1 ¶ 30.] As such, Plaintiff contends he was coerced and forced to retire "[w]ith the threat of losing his pay; being demoted from the rank of captain and thereby reducing his retirement and not being awarded the Honorable discharge to which he was entitled[.]" [ECF No. 1 ¶ 32.] In the Court's opinion, Plaintiff has asserted just enough facts to plausibly raise the inference that the outcome of the process he was afforded—here the Duty Status hearing—was predetermined, rendering the hearing pro forma and meaningless. Cf. Lamoureux, 648 F. Supp. at 1175 (dismissing claim for deprivation of procedural due process because plaintiff "failed to allege that he availed himself of the remedies afforded by state law and has failed to show that the available remedies were inadequate"). At this junction, however, the Court need not address whether Plaintiff succeeds on these facts. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12-13 (1st Cir. 2011) ("Nor may a court attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely.'" (quoting Twombly, 550 U.S. at 556)).

### 2.  Substantive Due Process

Substantive due process "claims are limited to government action that, by its very nature, shock[s] the conscience . . . and [are] reserve[d] . . . for truly horrendous situations." Freeman v. Town of Hudson, 714 F.3d 29, 40 (1st Cir. 2013) (internal citation omitted). The applicable test "is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011) (alteration in original) (quoting González-Fuentes v. Molina, 607 F.3d 864, 881 (1st Cir. 2010). In general, government action is "conscience shocking" when the behavior is "extreme and egregious" or "truly outrageous, uncivilized, and intolerable." Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006) (quoting Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999)). "Mere violations of state law, even violations resulting from bad faith, do not necessarily amount to unconstitutional deprivations of substantive due process." DePoutot, 424 F.3d at 119 (citation omitted). This standard was deliberately set high to protect the Constitution from being demoted to "a font of tort law." Cummings v. McIntire, 271 F.3d 341, 344 (1st Cir. 2001) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8, 848 (1998)).

Plaintiff argues that the facts before us are similar to those in Bliss v. Sanguinet, No. 12-10123-RWZ, 2013 WL 3334728 (D. Mass. June 24, 2013). In that case, the plaintiff contended that his pre-termination hearing was a sham because the decision to terminate him had been predetermined, as evidenced by the defendant's statements that he was "going to carry out the wishes of the Board" and that the matter was "out of [his] hands," despite the fact that defendant was the decision-maker for the disciplinary process. Id. at *6 (alteration in original). In ruling on

defendants motion for judgment on the pleadings[4] for failure to state a claim, we held that plaintiff's substantive due process claim "clear[ed] the hurdle, albeit barely." Id. at *5. Although the conduct in question was "arguably less extreme than other examples found in the case law," id. (citing cases), we found that plaintiff's allegations "paint[ed] a highly troubling picture of an abuse of official power." Id. We drew on plaintiff's allegations that "town officials unlawfully targeted him for personal and political reasons," including by "bringing unfounded charges of misconduct," conspiring "to concoct false allegations against him, and knowingly terminating him without just cause." Id.

In the instant case, the Complaint pleads enough facts to allow the Court to draw the reasonable inference that the outcome of the Duty Status hearing was predetermined, such that the hearing was a sham. [ECF No. 1 ¶¶ 25-26, 30.] Nevertheless, the Court is not convinced that Plaintiff has alleged conduct that was so offensive and egregious as to shock the conscience. See Harron, 660 F.3d at 536. Unlike in Bliss, Plaintiff's allegations fail to "paint a highly troubling picture of an abuse of official power." See 2013 WL 3334728, at *5. The allegations are simply not comparable. See Dobelle, 12 F. Supp. 3d at 290-91 (distinguishing Bliss on a similar basis and rejecting substantive due process claim).

### b.  Count IV (42 U.S.C. § 1985 Conspiracy)

Under 42 U.S.C. § 1985(2), a civil rights conspiracy to obstruct justice, intimidate a party, witness, or juror requires that:

> two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely,

---

[4] The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is the same as the one used to evaluate a Rule 12(b)(6) motion. See Asociación De Subscripción Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 22 (1st Cir. 2005) (In considering a Rule 12(c) motion, "the trial court must accept all of the nonmovant's well-pleaded factual averments as true, and draw all reasonable inferences in his favor.").

fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified[.]

To establish a viable claim under the statute, the plaintiff must allege facts that plausibly demonstrate an agreement between the alleged conspirators to "deprive the plaintiff of h[is] civil rights." Alston v. Spiegel, 988 F.3d 564, 578 (1st Cir. 2021) (alteration in original) (quoting Parker v. Landry, 935 F.3d 9, 18 (1st Cir. 2019)). Absent direct evidence of an agreement, the complaint's factual allegations may require reasonable inferences of an agreement, but "[v]ague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss." Id. (citations omitted) (holding that no agreement to retaliate for a racial discrimination complaint can be inferred from two alleged co-conspirators distributing a letter criticizing plaintiff and from one of the co-conspirators having knowledge of his personnel file); see also Does 1-6 v. Mills, 16 F.4th 20, 37 (1st Cir. 2021) (holding that support for a vaccine mandate after the regulation passed, but not that the employer had a role in the issuance of such mandate, was not enough to allege an agreement for § 1985 purposes).

Further, a plaintiff must allege enough evidence to demonstrate that further discovery would not be a "shot in the dark," but rather would plausibly reveal an agreement. Parker, 935 F.3d at 18-19 (plaintiff fails to allege facts that lead to a reasonable inference that officials of a correctional facility, state prison, and department of corrections conspired to deprive her of her civil rights because the complaint was "devoid of [such] facts," also failing to invoke her right to discovery). The complaint must allege more than mere speculation of an agreement based on defendants' job responsibilities and knowledge of a plaintiff's circumstances. See Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 596 (1st Cir. 2011) (finding that plaintiff's bald assertions that defendants, by virtue of their positions, "participated" or "approve[d]" in adverse

employment action were insufficient); Alston, 988 F.3d at 578 (explaining that absent direct evidence of an agreement plaintiff is required to plead factual allegations sufficient to raise an inference that there was an agreement between the defendants to deprive the plaintiff of his rights).

As an initial matter, Plaintiff does not allege an agreement between the Defendants. Plaintiff contends that Defendants conspired to deprive him of his constitutional rights, coercing him into retirement through force or intimidation. However, there are no facts alleged from which it could be reasonably inferred that Defendants agreed with one another to force Plaintiff out from MSP. In his opposition brief, Plaintiff asks the Court to make an inference based on Defendants' roles and duties within MSP, asserting that it was reasonable for him to rely on Defendant Pinkham's statements about the expected result of the Duty Status hearing and the internal investigation due to Defendant Pinkham's role as the Lieutenant Colonel of Standards and Training. [ECF No. 23 at 12.] He adds that Defendant Pinkham could not have acted without the authorization of Defendant Mason, who was then the Colonel of MSP, and that Defendant Mawn, who succeeded Defendant Mason as Colonel, furthered the conspiracy by refusing Plaintiff's request for reinstatement. [Id.] Nevertheless, besides stating the positions that each Defendant held at the times relevant to this action, [ECF No. 1 ¶¶ 5-7], the Complaint does not allege any facts explaining Defendants' roles at MSP, the scope of their duties, whether Defendant's duties required them to interact with each other, or the decision-making chain within MSP as it relates to employee misconduct. The recitation of Defendants' roles at MSP, without more, does not lead this Court to reasonably infer that Defendants made an agreement.

Even when the Massachusetts State Police's Rules & Regulations[5] (the "Rules & Regulations") are inserted into the picture, the Court does not believe that the allegations in the Complaint clear the threshold. The Rules & Regulations provide that a Duty Status hearing may be convened against a member of MSP by "[a] Division Commander, with the approval of the Colonel/Superintendent[.]" Rules & Regulations art. 6.2.1. While this raises a reasonable inference that Defendant Mason approved the Duty Status hearing in question, it remains mere speculation that the Defendants made an agreement to deprive of his constitutional rights, particularly in light of the fact that the Complaint only cursorily references Defendants Mason and Mawn, as discussed supra. In his briefing, Plaintiff recites various other provisions of the Rules & Regulations that explain MSP's disciplinary action procedures. [ECF No. 23 at 4.] Although Plaintiff would have us raise an inference from these provisions, [ECF No. 23 at 4], the Court declines the invitation, as those provisions focus on the operation of Duty Status hearings and the eventual disposition of a disciplinary action, neither of which occurred in the instant case due to Plaintiff's retirement. Given that Plaintiff neither alleges an agreement between the parties nor facts sufficient to raise a reasonable inference of such agreement, the Court will grant Defendants' motion and dismiss Count IV against Defendants.

### c. Qualified Immunity

Defendants posit that Counts II-IV cannot advance because they are entitled to qualified immunity against Plaintiff's claims under §§ 1983 and 1985. [ECF No. 17 at 12, 19, 22.] Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 577 U.S. 7, 11 (2015) (quoting Pearson v. Callahan, 555 U.S.

---

[5] The Court takes judicial notice of the Massachusetts State Police Rules and Regulations. [ECF No. 16-4]; see Fed. R. Evid. 201(b)(2); see Mazzarino, 616 F. Supp. 3d at 124 n.4; Madison, 393 F. Supp. 3d at 137, 137 n.2.

223, 231 (2009)). The Court does a two-step analysis to determine if qualified immunity bars a claim. The Court "must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fuentes, 568 F.3d 263, 269 (1st Cir. 2009) (citing Pearson, 555 U.S. at 232). For the second step, a right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howard, 566 U.S. 658, 664 (2012) (citation omitted). A case directly on point is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

When defendants invoke a qualified immunity defense, "the burden is on the plaintiff to show that the defense is inapplicable." Escalera-Salgado v. United States, 911 F.3d 38, 41 (1st Cir. 2018). Thus, Plaintiff has the burden of identifying "controlling authority or a robust consensus of persuasive authority such that any reasonable official in the defendant's position would have known that the challenged conduct is illegal in the particular circumstances that he or she faced." Rivera-Corraliza v. Morales, 794 F.3d 208, 214-15 (1st Cir. 2015) (citations omitted); Belsito Commc'ns, Inc. v. Decker, 845 F.3d 13, 23 (1st Cir. 2016) (highlighting that Plaintiff is required to "spotlight controlling authority or a robust consensus of cases of persuasive authority."); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 (1st Cir. 1997) (finding that when a defendant invokes qualified immunity, "it is the plaintiff's burden to demonstrate the infringement of a federally assured right. If she fails to do so, the [defendant] prevails."). The Court will address each Count separately and is free to address the steps in any particular order. See Raiche v. Pietroski, 623 F.3d 30, 35 (1st Cir. 2010) ("These prongs of the

analysis need not be considered in any particular order, and both prongs must be satisfied for a plaintiff to overcome a qualified immunity defense.").

Because the facts as alleged in the Complaint fail to show a violation of a constitutional right as to Count III (Substantive Due Process) and Count IV (42 U.S.C. § 1985 Conspiracy), the Court need not engage in a qualified immunity analysis as to those Counts. See Maldonado, 568 F.3d at 269 (explaining that a qualified immunity requires finding whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right). As such, the Court will turn to assessing whether Defendants enjoy qualified immunity as to Count II (First Amendment) and Count III (Procedural Due Process).

### i.   Count II (First Amendment)

Defendants assert that Plaintiff's Count II First Amendment claim is barred by qualified immunity under § 1983. [ECF No. 17 at 12.] The Court will first decide "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right." Maldonado, 568 F.3d at 269. As discussed, supra, Plaintiff successfully alleges a First Amendment retaliation claim under § 1983 against Defendant Pinkham. If taken as true, Plaintiff satisfies the burden of alleging a "violation of a constitutional right" – that Defendants violated his First Amendment rights by retaliating against him for testifying in the criminal trial of SPAM's former president. Id.

Plaintiff equally satisfies his burden in demonstrating the "clearly established" standard. Plaintiff points to Lane, highlighting that the Supreme Court held that "a public employee who provides truthful sworn testimony, compelled by subpoena . . . is speech as a citizen on a matter of public concern." Lane, 573 U.S. at 238. The Court finds Lane to be persuasive here. While the Supreme Court granted qualified immunity to the defendant in Lane because the "question was

not 'beyond debate' at the time [the Defendant] acted," the Court set new precedent in finding that truthful sworn testimony by public employees outside of the scope of their typical job duties is speech eligible for First Amendment protection. Id. at 238, 249 (quoting al-Kidd, 563 U.S. at 741). Therefore, Defendants were reasonably on notice that "the challenged conduct is illegal in the particular circumstances." Rivera-Corraliza, 794 F.3d at 215. As Plaintiff successfully spotlit controlling authority that existed at the time of the alleged violation, he satisfies his burden in demonstrating the "clearly established" standard. Thus, the Court finds that Defendants are not entitled to qualified immunity as to Count II.

### ii.        Count III ( Procedural Due Process)

Defendants also assert a qualified immunity defense to Plaintiff's Count III Procedural Due Process claims. [ECF No. 17 at 19.] Plaintiff fails to satisfy his burden in establishing that "controlling authority or a robust consensus of persuasive authority" exists establishing that the constitutional question is beyond debate. Rivera-Corraliza, 794 F.3d at 214. In fact, he points to no cases that compare the alleged violation of his Due Process rights to existing caselaw that would demonstrate that defendants should have known their conduct was illegal in the particular circumstances. Since the burden to "demonstrate the infringement of a federally assured right" is on the Plaintiff, failure to do so entitles the Defendants to qualified immunity. Quintero de Quintero, 974 F.2d at 228. Since Plaintiff has failed to satisfy the "clearly established" standard of the qualified immunity analysis, Defendants are therefore entitled to qualified immunity as to Count III.[6]

---

[6] Since Plaintiff failed to satisfy the "clearly established" step, the Court need not address the first step. See, e.g., Belsito Commc'ns, Inc., 845 F.3d at 23.

### B.  State Claims

#### a.  Count I (Massachusetts Civil Rights Act)

The Massachusetts Civil Rights Act ("MCRA") creates a private action in which

individuals may recover for constitutional violations regardless of whether they acted under the

color of law. Mass. Gen. Laws ch. 12, § 11I; see Sena v. Commonwealth, 629 N.E.2d 986, 993

(Mass. 1994). To state a viable MCRA claim, a plaintiff must demonstrate that "(1) the exercise

or enjoyment of some constitutional or statutory right; (2) has been interfered with, or attempted

to be interfered with; and (3) such interference was by threats, intimidation, or coercion." Barron

v. Kolenda, 203 N.E.3d 1125, 1139-40 (Mass. 2023) (quoting Glovsky v. Roche Bros.

Supermarkets, Inc., 17 N.E.3d 1026, 1035 (Mass. 2014)).

> Under the MCRA,
>
> threat consists of the intentional exertion of pressure to make another fearful or
> apprehensive of injury or harm; intimidation involves putting in fear for the
> purpose of compelling or deterring conduct; and coercion is the application to
> another of such force, either physical or moral, as to constrain him to do against
> his will something he would not otherwise have done.

Glovsky, 17 N.E.3d at 1035 (cleaned up) (quoting Haufler v. Zotos, 845 N.E.2d 322, 335 (Mass.

2006)). Whether a defendant's conduct "constitutes such threats, intimidation, or coercion"

depends on whether a reasonable person would feel threatened, intimidated, or coerced. Id.

(citation omitted).

Massachusetts courts have found that "coercion is a broader category that may rely on

physical, moral, or economic coercion." Kennie v. Nat. Res. Dep't of Dennis, 889 N.E.2d 936,

944 (Mass. 2008) (finding a genuine issue of fact as to whether Town official's words and

authority used to prevent homeowners from obtaining a permit amounted to non-physical

coercion). While it is rare for non-physical conduct to be actionable under the MCRA, "purely

economic pressures may constitute actionable coercion under the MCRA[.]" Thomas v.
Harrington, 909 F.3d 483, 492 (1st Cir. 2018) (citation omitted).

Case law as to what constitutes non-physical coercion is unsettled. However, courts have
typically found that a finding of non-physical coercion "require[s] 'a pattern of harassment and
intimidation[.]'" Id. at 493 (citing Howcroft v. City of Peabody, 747 N.E.2d 729, 746 (Mass.
App. Ct. 2001). The availability of a showing of non-physical coercion under the MCRA is not
available when a mere "threat to use lawful means to reach an intended result" is made. Id.
(quoting Buster v. George W. Moore, Inc., 783 N.E.2d 399, 411 (Mass. 2003)); see McClain v.
Cape Air, No. 22-cv-10649-DJC, 2023 WL 3587284, at *9 (D. Mass. May 22, 2023) ("Without
more, a threat to use lawful means to reach an intended result is not actionable." (citation
omitted)).

Here, the Complaint fails to allege that Defendants engaged in threats, intimidation, or
coercion of any sort. Plaintiff contends that Defendant Pinkham coerced him twice: first, when
Defendant Pinkham informed him he would be placed on administrative leave pending the Duty
Status hearing, at which he could expect to be suspended; and second, when Defendant Pinkham
told Plaintiff that, in addition to the Duty Status hearing, he would initiate an internal affairs
investigation of Plaintiff's conduct. [ECF No. 1 ¶¶ 25-26; ECF No. 23 at 5-6.] Because these
disciplinary actions could have potentially impacted his pay and retirement, Plaintiff alleges that
he was coerced into retiring in order to protect his livelihood. [ECF No. 1 ¶ 32; ECF No. 23 at 6.]
While it is certainly questionable why MSP would initiate a disciplinary action against Plaintiff
three years after the indictment against SPAM's president was made public, it cannot be
reasonably said that Defendant Pinkham's statements amount to the "pattern of harassment and
intimidation" required to support a finding of non-physical coercion under the MCRA. See

20

Thomas, 909 F.3d 483 at 493; cf. McClain, 2023 WL 3587284, at *9 (finding that amended complaint alleged a pattern of economic coercion because defendant "repeteadly demand[ed]" repayment of an investment and "Plaintiffs believed they had no option but to continue their employment [with defendant] or they would be forced to pay" a penalty (first alteration in original)). The same is true as to Defendant Mawn's denial of Plaintiff's request for reinstatement. See Canney v. City of Chelsea, 925 F. Supp. 58, 70 (D. Mass. 1996) ("[M]ere recitals of boiler plate claims of 'threats, intimidation, or coercion' do not meet the requirements of [MCRA] pleading." (quoting Hobson v. McLean Hosp. Corp., 522 N.E.2d 975, 978 (Mass. 1988))). And, the Complaint does not otherwise plead any factual allegations as to Defendant Mason and any relevant interaction he may have had with Plaintiff that amounted to coercion.

Plaintiff nonetheless asks us to disregard the absence of a pattern of harassment and intimidation in the Complaint because Defendants used a "sham" proceeding—the Duty Status hearing and the internal investigation—to coerce him into retirement. "Generally, by itself, a threat to use lawful means to reach an intended result is not actionable under the [MCRA]." Buster, 783 N.E.2d at 411 (quoting Sena, 629 N.E.2d at 994). Although Plaintiff contends that the outcome of these proceedings was predetermined, he has not alleged that the Duty Status hearing or the internal investigation were unlawful under federal or state law. See Koppel v. Moses, No. 20-11479-LTS, 2022 WL 669734, at *3 (D. Mass. Mar. 7, 2022) ("[A]lthough [plaintiff] contends that the 'expulsion was illegitimate' . . . for a lack of notice and opportunity to respond, he has not alleged that it was unlawful[.]"); Freeman v. Town of Hudson, 849 F. Supp. 2d 138, 158 (D. Mass. 2012) ("The [plaintiffs] do not allege that it would be unlawful for the [defendant] to be involved with the [plaintiffs'] conservation issues or that it would be

unlawful for the [defendant] to impose a fine for a violation."). Thus, the Court concludes that Plaintiff has not plausibly alleged a MCRA violation.[7]

### b. Count VI (Intentional Infliction of Emotional Distress)

In order to establish a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show "(1) that [Defendants] intended, knew, or should have known that [their] conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014) (citing Howell v. Enterprise Publ. Co., 920 N.E.2d 1, 28 (Mass. 2010)). A plaintiff must also allege more than bare assertions to demonstrate that the emotional distress was severe. Polay, 10 N.E.3d at 1130 (holding that statements that do "not constitute an allegation of fact but rather a recitation of the element of severe emotional distress" do not suffice).

The conduct for an IIED claim must "go beyond all possible bounds of decency, and [be] regarded as atrocious, and utterly intolerable in a civilized community." Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 240 (1st Cir. 2013) (quoting Foley v. Polaroid Corp., 508 N.E.2d 72, 82 (Mass. 1987)). Dismissal is appropriate if the "conduct alleged in the complaint does not rise to this level." Polay, 10 N.E.3d at 1128-29 (citing Beecy v. Pucciarelli, 441 N.E.2d 1035, 1040 (Mass. 1982). As Plaintiff urges, the trier of fact may "put as harsh a face on the actions of the [defendants] as the basic facts would reasonably allow[,]" but the standard is still very high. Richey v. Am. Auto. Ass'n, Inc., 406 N.E.2d 675, 678 (Mass. 1980) (finding that at worst, a

---

[7] Defendants assert a qualified immunity defense to Count I. Because the Court finds that the Complaint fails to plausibly allege a valid claim under the MCRA, it need not engage in a qualified immunity analysis. See Thomas, 909 F.3d at 493 n.18 ("Because the evidence fails to support a finding that [Defendant] violated the MCRA, we need not address his qualified immunity argument.").

supervisor's decision to terminate plaintiff was "bad, unjust, and unkind[,]" but did not amount to IIED even if plaintiff was particularly on edge); Polay, 10 N.E.3d at 1128.

Defendants argue that the IIED claim against them should be dismissed for two reasons. First, they contend that the Complaint fails to allege that Defendants acted with the requisite intent or recklessness. Second, Defendants point to the Complaints conclusory allegations that Plaintiff suffered severe emotional distress. In response, Plaintiff asserts that Defendants knowingly and intentionally caused emotional distress when Plaintiff "was threatened with the loss of his employment status and income, without him being a target of the USAO and there being no allegations of any wrongdoing[.]" [ECF No. 23 at 15.]

The Court agrees that the Complaint falls short. The facts in the Complaint show at most that Plaintiff was placed on administrative leave, that he was told he could expect to be suspended at a Duty Status hearing, and that Defendant Pinkham expected Plaintiff would likely be suspended without pay and suffer a demotion after the internal investigation was completed. Such facts and reasonable inferences therefrom do not plausibly assert the requisite state of mind or extreme and outrageous conduct. Plaintiff's cause is not helped by the fact that the Complaint recites the elements of the tort without pleading facts demonstrating that he suffered distress so severe that no reasonable person could be expected to endure it. [ECF No. 1 ¶¶ 71-74]; see Anjomi v. Kalai, 828 F. Supp. 2d 410, 414 (D. Mass. 2011) ("While [plaintiff] states that he experienced emotional distress, he describes neither the distress nor any sort of distress that would be so severe that 'no reasonable person could be expected to endure it.'" (quoting Tetrault v. Mahoney, Hawkes & Goldings, 681 N.E.2d 1189, 1197 (Mass. 1997))). Even assuming Plaintiff's allegations clear the bar, the Court is not convinced that Defendants actions constituted extreme and outrageous conduct. See Emerson v. Mass. Port Auth., 138 F. Supp. 3d

73, 76-77 (D. Mass. 2015) (finding that defendant's alleged actions of "accusing plaintiff of employee misconduct, scheduling disciplinary hearings and requiring plaintiff's attendance" did not rise to the level of extreme and outrageous conduct for purposes of IIED claim). Because the Complaint fails to plead Defendants' state of mind, outrageous conduct, and severe emotional distress, the Court will grant Defendants' motion and dismiss Count VI as to all Defendants.

### c.  Count V (Civil Conspiracy)

Count V of Plaintiff's action alleges civil conspiracy against all Defendants. [ECF No. 1 at 9.] Massachusetts law recognizes two types of civil conspiracy: the first is true conspiracy, "based on coconspirators exerting some peculiar power of coercion," and the second is concerted action conspiracy, a "form of vicarious liability for the tortious conduct of others . . . requiring an underlying tort." Greene v. Philip Morris USA Inc., 208 N.E.3d 676, 682 (Mass. 2023); Taylor v. Amer. Chemistry Council, 576 F.3d 16, 34-35 (1st Cir. 2009).

The second theory, concerted action conspiracy, "applies to a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result." Greene, 208 N.E.3d at 683 (quoting Kirker v. Hill, 689 N.E.2d 833, 837 (Mass. App. Ct. 1998)). As such, proof of an underlying tort is required. Taylor, 576 F.3d at 35. Since Plaintiff fails to successfully plead his IIED claim, see supra, no underlying tort claim survives. Therefore, Plaintiff cannot assert civil conspiracy under the concerted action theory.

This leaves only the true conspiracy theory under Massachusetts law. To advance a true conspiracy claim, Plaintiff must allege and prove "that by mere force of numbers acting in unison the defendants exercised some peculiar power of coercion of the plaintiff which any individual standing in a like relation to the plaintiff would not have had." Mass. Laborers' Health

24

& Welfare Fund v. Philip Morris, Inc., 62 F. Supp. 2d 236, 244 (D. Mass. 1999) (quoting

Fleming v. Dane, 22 N.E.2d 609, 611 (Mass. 1939)). In other words, Defendants must

collectively be "able to bring about results that are different in kind from what any of them could

achieve differently." Koufos v. U.S. Bank, N.A., 939 F. Supp. 2d 40, 51 (D. Mass. 2013)

(quoting Shirokov v. Dunlap, Grubb & Weaver, PLLC, No. 10-12043-GAO, 2012 WL 1065578,

at *25-26 (D. Mass. Mar. 27, 2012). In the present case, Plaintiff does not plead any facts that

demonstrate that Defendants exercised a "peculiar power of coercion" beyond conclusorily

stating that they "reached an agreement among themselves to deprive Plaintiff of his

constitutional rights." Mass. Laborers' Health & Welfare Fund, 62 F. Supp. 2d at 244; [ECF No.

1 ¶ 65.] Plaintiff does not point to any facts indicating an actual agreement between Defendants;

he merely alleges that acts performed by Defendants served as retaliation against him for

testifying in the criminal trial. He does not allege any facts that indicate that the Defendants

could not have achieved the same result individually. Therefore, the Court finds that Plaintiff

cannot advance on a "true conspiracy" claim.

Accordingly, the Court will grant Defendants' motion to dismiss as to Count V of the

Complaint.

## IV.    Conclusion

In accordance with the foregoing, Defendants' motion to dismiss [ECF No. 16] is

**GRANTED IN PART** and **DENIED IN PART**. Defendants' motion to dismiss is GRANTED as

to Counts I, III-VI. Defendants' motion is partially DENIED as to Count II as it relates to

Defendant Pinkham.

**SO ORDERED.**

Dated: September 30, 2024

 */s/ Margaret R. Guzman*
Margaret R. Guzman
United States District Judge